THE LACE HOUSE v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. December 12, 1905.)

No. 1,454.

1. CUSTOMS DUTIES—UNDERVALUATION—FORFEITURE—CONDITION PRECEDENT—LEGAL APPRAISEMENT.

Tariff Act July 24, 1897, c. 11, § 32, 30 Stat. 211 [U. S. Comp. St. 1901, p. 1924], providing for the forfeiture of merchandise the "appraised value" of which exceeds the entered value more than 50 per cent., is not applicable unless there has been a legal appraisement.

2. SAME—APPRAISEMENT—METHOD OF PROCEDURE.

An appraising officer, having no knowledge as to the value of certain imported articles, sent samples to the appraiser at the port of New York for information. Held, that this was legal, and that the right so to do or

to use any other available means was conferred by Customs Administrative Act June 10, 1890, c. 407, § 10, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1922], authorizing appraising officers to "use all reasonable ways and means" in their power in ascertaining the value of merchandise.

3. SAME—VALIDITY OF APPRAISEMENT—CONDITION PRECEDENT—CERTIFICATE OF APPRAISEMENT.

Under section 2950, Rev. St. [U. S. Comp. St. 1901, p. 1940], and Customs Administrative Act June 10, 1890, c. 407, § 13, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1932], relating to certificates of officers appraising imported goods, it is intended that the appraisement should be reduced to writing. The certificate of the appraising officer is the legal evidence of appraisement, and if it is not made the appraisement is illegal.

4. SAME—TREASURY REGULATIONS—DIRECTORY PROVISIONS.

While the customs regulations are valuable as showing the practical construction placed by the Treasury Department on the customs laws, many of them are merely directory, and an appraisement might be valid, and yet not in strict conformity with every requirement of the rules prescribed for the conduct of appraisements.

5. SAME—APPRAISEMENT—ADVANCE IN VALUE—NOTICE TO IMPORTERS.

Where an appraiser who has advanced the value of imported merchandise fails to give notice of the advance to the importer as required by the customs regulations, the importer thus being deprived of the right of appeal for reappraisement, the appraisement is invalid, and does not afford a proper basis for the forfeiture and condemnation of the goods for undervaluation, under Tariff Act July 24, 1897, c. 11, § 32, 30 Stat. 211 [U. S. Comp. St. 1901, p. 1924].

6. SAME—UNDERVALUATION—SEIZURE—RIGHT OF REAPPRAISEMENT.

The fact that goods have been seized for undervaluation does not deprive the consignee or owner of the right of reappraisement given in Customs Administrative Act June 10, 1890, c. 407, § 13, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1932].

7. SAME—FALSE INVOICE—FAILURE TO SPECIFY GOODS.

The fact that three lace dresses in a package by themselves were found in a case of laces and embroideries, but were not mentioned in the invoice does not by itself warrant the infliction of the penalties provided in Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 130 [U. S. Comp. St. 1901, p. 1895], for entering merchandise by means of a false or fraudulent invoice.

In Error to the District Court of the United States for the Northern District of Georgia.

This was a proceeding in rem brought by the United States in the court below to condemn certain merchandise which had been imported into the United States. The goods consisted of laces, embroidery, edging, and insertion which had been manufactured in Saxony and Switzerland, and of three lace dresses. It is alleged in the information that the invoice of the goods (1) did not contain a true and full statement of the actual market value and wholesale price of said merchandise at the time of the exportation thereof to the United States in the principal markets of the country from whence said merchandise was exported, and (2) that the said invoice was a false invoice, in this: that, when the case of laces and embroideries was opened in Atlanta, Ga., it contained three lace dresses, valued at $20.42, which were not on the invoice. The information elaborately charged the consignee with a scheme to defraud the government by means of a false and fraudulent invoice in making the entry of the imported merchandise.[1]

The Lace House, a corporation under the laws of Georgia, intervened and claimed the goods, and answered the information. The answer averred that

---

[1] See Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 135 [U. S. Comp. St. 1901, p. 1895].

the value of the goods declared was the reasonable value thereof; that the reasonable duty on the merchandise to which the United States was entitled had been paid; that the claimant tendered the amount of duty alleged to be due, even though said amount is excessive; that neither the claimant nor any of its officers or agents had any knowledge that the three lace dresses were in the package until the same was opened; that it was not the purpose of the claimant to defraud or deprive the United States government of any of its lawful duty on the goods; that the omission to put the lace dresses on the invoice was an accident or mistake, and was not done with intent to injure or defraud the government.

The government offered the following evidence:

Marcellus O. Markham testified: "I am a surveyor of customs for the port of Atlanta, Ga., and in my official capacity received a box of lace goods shipped from London, England, to the Lace House at Atlanta, under an invoice which I here present. This box contained the articles specified in the invoice, and in addition thereto contained three lace dresses. These three lace dresses were in a package by themselves, and the lace goods described in the invoice were done up in packages corresponding with the enumeration on the invoice. I sent for Mrs. Hunter, president of the Lace House, and she came to my office, and I then presented to her the declaration, which I also have. I do not know if Mrs. Hunter read this paper, and I do not recall that I read it to her, but I handed it to her and requested her to sign it, and she did sign it and made the affidavit entered thereon. I sent that invoice on to New York for valuation or appraisement, and sent with it samples of the goods. I received in reply to my communication this letter and the statement attached thereto. I made the statement attached to that letter my appraisement of the goods. I do not know anything about the value of the lace goods. I do not know of my own knowledge which is correct, the valuation given in the invoice or the valuation on the paper which I adopted as my appraisal. I afterwards cited Mrs. Hattie Hunter and Vance Hunter up for examination, and they testified, and their testimony is in writing and in the hands of the district attorney. My clerk, Smith Easley, made calculations of the value of the goods in pounds, shillings, and pence, according to the invoice, and in pounds, shillings, and pence according to my appraisal."

Smith Easley testified: "The three lace dresses were not on the invoice, and I made a calculation of the value of the goods as shown in the invoice and as shown on the list sent from New York, about which Surveyor Markham has testified. If you take all the goods on the invoice according to the invoice valuation, and take all the goods on the appraisal adopted by the surveyor, I find as follows: According to the invoice, exclusive of the lace dresses, the amount was $315. According to the appraisement, they were worth $461.33. There is a difference of $146.33. The increase of the appraised value of the whole over the invoice was 46 per cent. Three packages or parcels in the box numbered 1461, 4839, and 5927, or numerically considered from the top, 1, 2, and 4, amounted to 66 per cent. by the appraised value more than the invoice price. Each of these separate items exceeded 50 per cent. by appraised value over the value as given in the invoice. The three lace dresses were not included in the total of the value of the goods according to the invoice, and are included in the value of the goods in the appraised value which the surveyor testified he adopted as his appraisal."

. The government offered in evidence the following letter and statement, both referred to by the witness Markham:

"Office of the Appraiser of Merchandise, Christopher and Washington Streets.

"New York, N. Y., April 21, 1903.

"Hon. M. O. Markham, Surveyor of Customs, Atlanta, Ga.—Sir: Your favor of the 9th instant, regarding a shipment of laces and embroideries, invoice No. 5,524, dated at London, March 16th, to the Lace House, Atlanta, Ga., at hand. The samples covering this shipment also received. In reply to your request for a detailed appraisement of same, I inclose herewith a list of the pattern numbers with the appraised value of each in the country of production and in the currency thereof. The embroidered laces were man-

ufactured in Plauen, Saxony; the embroideries in St. Gall, Switzerland. The London values would naturally be appreciably higher.

"Respectfully,　　　　　　　　　　　　　G. W. Whitehead, Appraiser,

"1 enclosure.　　　　　　　　　　　　　　　　　　　　　　　E. A. H."

The statement which was offered with the letter, and presumably the inclosure referred to in the letter, consisted of a list of the pattern numbers of the lace with its appraised value per metre, aune, and dozen. The list was not signed, dated, or certified by anyone, and covers two and a half printed pages. It may be well shown by the first and last parts or divisions, which are as follows:

| 4,839　Lace. | | Appraised Value. | | |
|---|---|---|---|---|
| Pat. No. 4,839 | Mks. | 3 00 | per | metre. |
| " " 4,848 | " | 1 50 | " | " |
| " " 5,559 | " | 2 25 | " | " |
| " " 5,678 | " | 4 00 | " | " |
| " " 4,853 | " | 4 00 | " | " |
| " " 4,907 | " | 2 50 | " | " |

| 31.　Box 7. | | Appraised Value. | | |
|---|---|---|---|---|
| Pat. No. 126,074 | Fcs. | .70 | per | doz. |
| " " 84,904 | " | .60 | " | " |
| " " 86,974 | " | .60 | " | " |
| " " 86,976 | " | .70 | " | " |
| " " 86,977 | " | .90 | " | " |
| " " 84,978 | " | .80 | " | " |

The claimant objected to the introduction of this letter and paper in evidence on the ground that it was unofficial, that in itself it showed no appraisal of the property, and that it was a mere communication from a department of the government without any statement as to who made it, how it was made, or the knowledge and capacity of the person making it to arrive at the conclusions of value therein stated; and on the further ground that it was not authenticated in any official manner, or by any officer of the law in his official capacity; and on the further ground that Mr. Markham, having declared that he had no knowledge of the value of the goods and that he based his opinion entirely and alone upon that paper, had not made in fact any appraisal, and that the paper was therefore incompetent and inadmissible in evidence; and on the further ground that Mrs. Hunter had not been shown to have had any notice of the appraisal, nor any opportunity to appeal therefrom. The court thereupon admitted the letter and paper in evidence, and the claimant excepted. The invoice of the goods, signed, "Vance Hunter, Charles Elstob, Agent," and the declaration of the consignee, signed, "Lace House, H. Hunter, President," both in the usual form, were in evidence.

The government having rested, the claimant offered the following evidence:

Mrs. Hattie Hunter testified: "The Lace House is a corporation, and I own nearly all of it—all except one share, which my husband, Vance Hunter, owned. I was sent for by M. O. Markham, surveyor, when the case of the lace goods arrived. Vance Hunter was sick at the time and unable to attend to the business, and this was the first time that I had been called on in a matter of that kind. I had never made a declaration before, and Mr. Markham handed me a paper which I signed without reading, or without any knowledge of its contents. The fact was that I thought it was a mere matter of form, and I did not know what was in the box, and had paid no particular attention to what was in the invoice. I did not know until I heard about the lace dresses being in the box that they were in it. I do not know who put them in or how they came to be left off of the invoice. No one had authority to ship goods to the Lace House without having them on an invoice. I do not know what the market value of these goods was in the country where they were bought. I never had any intention of getting goods in at less than their value. When I heard that Mr. Markham thought the goods were undervalued, I gave notice that I was willing to pay duty on the real value. I

knew nothing about sending samples on to New York. I did not know that the goods were to be appraised in New York. The first thing I knew of the matter after signing the declaration was a summons to appear and be examined, and I testified at that examination under oath. The next I knew I was arrested under a warrant in a criminal case, and after that I was served in this case now on trial. I asked Mr. Hunter, who is now dead, what about the lace dresses, and he said he did not know they had been sent, and the only knowledge he had of lace dresses was that he had talked in Europe several years ago with a gentleman with whom he had long dealt and from whom he had bought in the past many goods, and this gentleman said, 'Some of these times I will make your wife a present of some lace dresses,' but that he did not know when, and had no idea they would be sent in this case, or that they would be left off of the invoice. Mr. Hunter generally attended to buying goods and making declarations, I suppose; because, if that is always necessary, he must have attended to it, because I never did a thing like that, except in this instance, and only then because he was seriously sick. Mr. Hunter was not in Europe within a year of the time these goods were shipped from London."

C. E. Dooly testified: "I am a clerk in the Lace House. I was present when the box was opened, and I cut off at the request of Mr. Markham samples of the laces contained in the box. I did not know anything about the appraisement. I am not familiar with the prices of such goods in Europe. Sometimes job lots can be picked up at low prices."

It was also shown that the Lace House, claimant, paid to M. O. Markham, surveyor, as duty on the goods $189, the same being the duty according to the invoice, but the surveyor did not receive, and declined to accept, any duty on the three lace dresses not on the invoice. The duty was paid by Mrs. Hunter before the package was opened, and before the alleged appraisement was made.

At the close of the argument, the court, upon motion of the district attorney, directed a verdict as follows: "The statute in question reads: 'That if the appraised value of any merchandise shall exceed the value declared in the entry by more than fifty per centum, except when arising from a manifest clerical error, such entry shall be held to be presumptively fraudulent, and the collector of customs shall seize such merchandise and proceed as in case of forfeiture for violation of the customs laws, and in any legal proceeding that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebut such presumption of fraudulent intent by sufficient evidence. The forfeiture provided for in this section shall apply to the whole of the merchandise, or the value thereof, in the case or package containing the particular article or articles in each invoice which are undervalued.' Now, it would seem under this statute that if any single article in the case is undervalued more than 50 per cent. that would be sufficient. But in this case the proof of the government goes farther than that, and takes them by lots, as you have heard them called here, and two of those lots at least were undervalued, one 68 per cent. and one 73 per cent. The evidence of that is in the testimony of the surveyor's clerk. So this seems to be a clear violation of the terms of the statute. Of course, the intention of the statute is very apparent. It provides that undervaluation up to 50 per cent. the consignee simply pays the extra duty on the undervalued goods. But, when it goes over 50 per cent. of the appraised value, then it shall be presumptively fraudulent, and the claimant of the goods must rebut that presumption by proof. I think this appraisement a perfectly good appraisal, and I do not see but one course to pursue, and that is to give the government a verdict in this case. The statute is plain. The evidence is uncontradicted that one of those lots was 68 per cent. under the appraised value (which is more than 50 per cent.), and consequently the whole of the merchandise is forfeited to the government. Of course, as to the three lace dresses, counsel for the claimant makes no question but that they would be forfeited in any event. You can prepare a verdict, and I will get Mr. Harwell to act as fore-

man, and sign it. You can have an exception to that, Capt. Ellis. Let an exception be noted."

The claimant duly excepted to the action of the court in directing a verdict. The jury returned a verdict as directed, and the court entered judgment of forfeiture thereon, and the claimant brings the case here on error. It is assigned by claimant, the plaintiff in error here, that the Circuit Court erred (1) in receiving in evidence the letter and statement copied herein, and (2) in directing a verdict for the government.

W. D. Ellis (Ellis, Wimbish & Ellis, on the brief), for plaintiff in error.

E. A. Angier, U. S. Atty.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

SHELBY, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The merchandise condemned by the judgment of the Circuit Court was shipped from London, England, to New York, the port of arrival, and was forwarded to Atlanta, Ga., the port of entry. The invoice described the case of goods as consisting of lace and embroidery, and stated their value in English money. The claimant, by its president, paid the duty on the goods according to the invoice. There were in the case three lace dresses—in a separate package—on which the duty was not paid; the government's officer declining to receive the same, because the dresses were not listed in the invoice. The surveyor at the port of Atlanta had no knowledge of the value of laces. He wrote and sent samples of the lace to an appraiser in and for the port of New York for expert advice on the subject, and received a reply inclosing a list and description of the laces by pattern numbers, and a statement of their value per metre, aune, and dozen, in the currency of Switzerland and Saxony, the countries where the laces and embroideries were made. The Atlanta surveyor's clerk, Smith Easley, made a calculation of the value of the goods as shown in the invoice, and as shown in the statement sent the surveyor from New York, and found that, among the many packages contained in the case, there were three "that amounted to 66 per cent. by the appraised value more than the invoice price." By the appraised value the witness meant the value as stated on the list sent the surveyor from New York in answer to his inquiry. "Each of these separate items," said the witness, "exceeded 50 per cent. by appraised value over the value given in the invoice." The surveyor, Markham, testified that on the receipt of the list with the valuation of the laces, sent in answer to his letter, he adopted the same as his appraisement. No written appraisement was made by the surveyor in any manner. No notice of any kind was given to the claimant, the consignee, or to any one, that any change had been made of the valuations stated in the invoice. The court received the evidence offered, and held that it proved a valid appraisement of the goods, and directed the jury to return a verdict for the government and against the claimant. The correctness of these rulings presents the questions to be decided. The court directed the verdict for the government because the appraised value of the merchandise

exceeded the value declared in the entry by more than 50 per centum. The part of the statute directly in point (Tariff Act July 24, 1897, c. 11, § 32, 30 Stat. 211 [U. S. Comp. St. 1901, p. 1924]) was quoted by the court in its instruction to the jury, and is copied in the foregoing statement of the case. The entry is presumptively fraudulent when the "appraised value of the merchandise exceeds," etc. To make the statute applicable there must be a legal appraisement. The correctness of the court's rulings, therefore, depends on the legality of the appraisement in question.

It should be noted in the beginning that the act of February, 1881, made Atlanta, Ga., a port of delivery and provided for the appointment of only "a surveyor of customs." Act Feb. 28, 1881, c. 92, 21 Stat. 373 [U. S. Comp. St. 1901, p. 1753]. There is no collector at the port of Atlanta, and no appraiser. At a port of delivery where there is no collector the surveyor may be invested with such of the powers and duties of collectors as are appropriate to such ports. Rev. St. U. S. §§ 2628, 2629 [U. S. Comp. St. 1901, pp. 1811, 1812]; Customs Regulations (1899) art. 1612. And where there are no appraisers, appraisement may be made by the collector or other proper officer. Customs Regulations (1899) arts. 1241, 1603. It is true, therefore, as contended by the United States Attorney, that Markham, as surveyor of customs of the port in which the merchandise had been entered, had the authority "to cause the actual market value or wholesale price at the period of exportation, in the principal markets of the country from which the same has been imported, to be appraised, and such appraised value shall be considered the value upon which duty shall be assessed" (Rev. St. U. S. § 2906 [U. S. Comp. St. 1901, p. 1923]), and that he was authorized to ascertain this value by "the use of all reasonable ways and means in his power." Act June 10, 1890, c. 407, § 10, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1922]. There being no collector and no appraiser at the port, Markham, the surveyor, was charged with the duty of appraisement. He had no knowledge of the value of the goods. Therefore, by sending samples, he sought information on the subejct. His right to use Whitehead's letter and the statement it contained, or any other available means is unquestioned. The statute clearly confers such right on him. He testified: "I made the statement attached to that letter my appraisement of the goods." It may be conceded that the letter and statement contained sufficient information from which the surveyor could have made an appraisement of the goods. That is immaterial. The controlling question is, did he make a valid appraisement as required by law? Is it not required by law that the appraisement should be shown by some writing, memorandum, or certificate, signed by the officer making it? These questions are answered, we think, by the statutes:

"Where merchandise shall be entered at ports where there are no appraisers, the certificate of the revenue officer to whom is committed the estimating and collection of duties of the dutiable value of any merchandise required to be appraised, shall be deemed and taken to be the appraisement of such merchandise required by law to be made by such officer." Rev. St. § 2950 [U. S. Comp. St. 1901, p. 1940].

And in Act June 10, 1890, c. 407, § 13, 26 Stat. 136 [U. S. Comp. St. 1901, p. 1932], it is enacted that:

"At ports where there is no appraiser, the certificate of the customs officer to whom is committed the estimating and collection of duties, of the dutiable value of any merchandise required to be appraised, shall be deemed and taken to be the appraisement of such merchandise."

By article 1246, Customs Regulations (1899), it is made the duty of the officer acting as appraiser "to appraise the actual market value," etc. "These facts will be indorsed upon the invoice and signed by the appraiser * * *"; and article 1266 requires that the advances on invoices shall be made."by writing on the invoice opposite each item advanced the words, 'Add to make market value,' stating in numerals the amount necessary to make the price per unit."

While these regulations are valuable as showing the practical construction placed by the Treasury Department on the customs laws, we understand, of course, that many of them are merely directory, and that an appraisement might be valid and yet not in strict conformity with every requirement of the rules prescribed. U. S. v. Loeb, 107 Fed. 692, 46 C. C. A. 562. But looking to the statutes themselves we cannot avoid the conclusion that it was intended that the appraisement should be reduced to writing. Commenting on the regulations and statutes we have cited, the Treasury Department on May 26, 1904, in a formal letter of advice to collectors as to their duties when acting as appraisers, informed them that "the certificate of the collector is the legal evidence of appraisement." And the Secretary added:

"And the certificates or the returns of values on invoices of goods, in order to be accepted as final, must be signed by you in your official capacity as appraiser, as required by law." 7 Treasury Decisions, pp. 844, 845 (T. D. 25,321).

There are other statutory provisions that point to the same conclusion. If the importer of merchandise is dissatisfied with the appraisement, he may within two days give notice to the collector in writing and require a reappraisment (section 13, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1932]), and on the reappraisement being made by the appraiser the consignee was entitled to an appeal to the board of three general appraisers. Customs Regulations (1899) art. 1274. Unless the appraisement is put in writing and signed, or in some way identified by the officer making it, and notice of it be given, it seems impossible to give effect in practice to the statutes intended to allow a review of the appraisement. This right of review is a valuable one, and a construction of the statutes that ignores it cannot be correct. The fact that the statute confers on the importer or consignee the right to require within two days after the appraisement a reappraisement indicates that it was the intention that the appraisement should be in writing, and that notice should be given to the owner or consignee. The Treasury Department evidently puts that construction on the statutes, because such notice is required to be given by its regulations. "The addition made by the appraiser having been thus noted on the invoice and certified by him [referring to procedure under article 1266], the invoice will be forwarded to the collector, who will at once give notice of the advance to the importer." Customs Regula-

tions (1899) art. 1267. The notice required to be given by the Treasury Department states that the "merchandise has been appraised in accordance with law," and states the amount which the appraisement exceeds the amount declared as the value on entry. And the notice concludes:

"If you appeal from this appraisement, it will be necessary to do so within two official days after the day of this notice."

When the goods are legally appraised, the fact that they are seized for undervaluation does not deprive the consignee or owner of the right of reappraisement. It is in just such cases that the right is most valuable. In the case of United States v. Nasser, heard before Judge Grosscup in 1894, the appraisement of the goods had been made in the usual manner, but the surveyor of customs denied the importer the right to appeal, because the goods were then under seizure for violation of the customs laws, and the court said "that as the defendant had been denied the full right of appeal the lawful appraisement on which to base the government's claim is wanting. * * * " Synopsis of Decisions, Treasury Dept. (1894) T. D. 14,778, p. 185. Where the appraisement is not made in writing, and no notice of it is given to the consignee, who is the claimant, the claimant being thereby deprived of the right to demand reappraisement, it seems to us that the intention of the statutes would be defeated should we hold that such appraisement was valid and a proper basis for the forfeiture and condemnation of the goods. We are of opinion that the record does not show such a compliance with the statutes and treasury regulations as to make the appraisement binding on, and conclusive against, the claimant, and that the evidence offered to show an appraisement should have been excluded on the claimant's objections, and that there was error in directing a verdict for the government.

No questions are raised by the record making it necessary to comment on the fact that the case contained three lace dresses which were not listed on the invoice. Collectors and other officers of the customs have directions from the Treasury Department as to the return to make on the invoice in such cases. It is sufficient to say now that the fact that the dresses were not on the invoice did not justify the instructions given the jury.

The judgment of the District Court is reversed, and the cause remanded, with instructions to grant a new trial.