### UNITED STATES v. EIGHTEEN PACKAGES OF DENTAL INSTRUMENTS.

(District Court, E. D. Pennsylvania. March 30, 1915.)

No. 3072.

1. CUSTOMS DUTIES ⟨⟩130—VIOLATION OF CUSTOMS LAWS—FORFEITURES.
   Imported goods, intended for entry through the customs house in the regular way, may be the proper subject of forfeiture proceedings for an attempted fraud upon the revenue, though there has been no actual introduction of the goods into the commerce of this country through a formal entry.
   [Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296–315; Dec. Dig. ⟨⟩130.]

2. TREATIES ⟨⟩2—PARCELS POST CONVENTIONS.
   The authority for entering into parcels post conventions with other countries is to be found in the treaty-making power.
   [Ed. Note.—For other cases, see Treaties, Cent. Dig. § 2; Dec. Dig. ⟨⟩2.]

3. TREATIES ⟨⟩8—PARCELS POST CONVENTIONS.
   Under article 12 of the parcels post convention with Germany (31 Stat. 1836), providing that the Postmaster General and the Secretary of State of the Imperial German Posts shall have authority to jointly make further regulations of order and detail necessary to carry out the convention, and may by agreement prescribe conditions for the admission in packages exchanged thereunder of articles thereby excluded from the mails, requirements made thereunder, if fairly within its scope and not destructive of the convention itself, are a part of the law of the land.
   [Ed. Note.—For other cases, see Treaties, Cent. Dig. § 8; Dec. Dig. ⟨⟩8.]

4. CUSTOMS DUTIES ⟨⟩130—VIOLATION OF CUSTOMS LAWS—FORFEITURES.
   No forfeiture of imported goods for a violation of the customs laws can be declared, unless clearly imposed by the law.
   [Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296–315; Dec. Dig. ⟨⟩130.]

5. CUSTOMS DUTIES ⟨⟩130—VIOLATION OF CUSTOMS LAWS—FORFEITURES.
   Under the parcels post convention with Germany, providing that all parcels post packages are subject to all customs duties and regulations, that the sender must make a customs declaration, giving, among other

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

things, an accurate statement of the contents and value of the parcel, that customs duties properly chargeable shall be collected on delivery in accordance with the customs regulations, and that a descriptive list of all packages sent shall accompany the mail in which dispatched, giving, among other things, the declared contents and value; the provisions of the customs regulations limiting parcels to a value of $80, and requiring entry where the foreign market value exceeds that stated by more than 25 per cent., or where it exceeds $100; and the provision of the act of 1909 for a forfeiture of importations accompanied with an intent to deprive the United States of its lawful duties—parcels post packages were not subject to forfeiture, though the true value of some of them exceeded the value as given by more than 25 per cent., where none of the packages had a value exceeding $80, there was no valuation under oath, and no formal invoice or invoice of any kind other than a suppositious bill of purchase; there being no requirement for a formal entry, and it not sufficiently appearing that the goods were the proper subject of entry.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 296–315; Dec. Dig. ☜130.]

6. CUSTOMS DUTIES ☜63—ENTRY—VALUATION.

Under the provision of the customs regulations for a customs entry with respect to parcels post packages, where the foreign market value exceeds that stated by the sender by more than 25 per cent., or where the value exceeds $100, it is the value of the individual package, and not of the entire number of packages arriving by the same mail, that determines the necessity of an entry.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 169; Dec. Dig. ☜63.]

Information for forfeiture by the United States against Eighteen Packages of Dental Instruments. On exceptions to the sufficiency of the libel. Exceptions sustained, and libel dismissed.

Francis Fisher Kane, U. S. Atty., of Philadelphia, Pa., for the United States.

Walter Evans Hampton, of New York City, for claimant.

DICKINSON, District Judge. The issue raised is the demurrer issue. The exceptions go both to the substance and form of the libel. The latter, at least in part, is met by an amendment which the United States asked leave to file. This leave was granted, and the case heard, as we understand, as if the exceptions had been filed to the libel as amended. The attempt to compress into a single phrase the question involved in this contention, and at the same time give anything like an adequate presentation of the points on which the question turns, is fraught with some difficulty. In its broadest outlines it is the right of the United States to confiscate through forfeiture proceedings the property of the claimant. The ground of forfeiture is the charged offense of an attempt to deprive the United States of its just revenues.

The transaction out of which the controversy arises is the importation of 18 packages of dental instruments. From the viewpoint of this case there are two ways in which goods may be brought into the United States. One is the well-known customs house method, and the other the parcels post. It will perhaps contribute to clarity of view to consider the transaction from the customs house entry standpoint. The tariff laws of the United States, with the administrative

features incorporated in or accompanying them, and the various customs house regulations, the practice of the appraiser's office, and the rulings of the Board of General Appraisers, unavoidably result in such a complex system that no one not familiar with the workings of all this elaborate machinery can be sure of what would happen to an importation in a given case.

[1] It is clear, under the ruling in United States v. 25 Packages of Panama Hats, 231 U. S. 358, 34 Sup. Ct. 63, 58 L. Ed. 267, that goods which had arrived at a port in the United States, intended for entry through the customs house in the regular way, might be the proper subject of forfeiture proceedings for an attempted fraud upon the revenue, notwithstanding there had been no actual introduction of them into the commerce of this country through a formal entry. That was the case of an information for a forfeiture of an importation on the ground of fraudulent undervaluation, and was upheld under Act Aug. 5, 1909, c. 6, §§ 8, 9, 36 Stat. 96, 97, notwithstanding the absence of any formal entry. If goods arrive at a port of entry without the usual preliminary compliance with the requirements of the law and the regulations, provision would seem to be made for a declaration of value, an appraisement, and, if called for, reappraisement of the goods, the ascertainment of the proper duty, and the imposition of fines and penalties for attempted frauds on the revenue. It will be observed that in each of these cases the things done are accompanied with the formalities of the taking of required oaths and something in the nature of according his day in court to the owner of the importation before his property can be confiscated. The Lace House v. United States, 141 Fed. 869, 73 C. C. A. 103. Goods sent by parcels post stand on a different footing from customs house entries.

[2] Originally the law made no provision for dutiable articles to be brought into this country through the mails, admission to which was limited to what is ordinarily regarded as mail matter. As was to be expected, parcels containing dutiable goods were nevertheless sometimes thus sent. The ever-growing intercommunication between the peoples of other countries and our own people made it necessary to in some way extend the operations of the postal service, so as to include packages and parcels other than what is recognized as ordinary mail matter. As a means to this end conferences of representatives of the countries most concerned were held and conventions reached. The authority for entering into these conventions is to be found in the treaty-making power, and what they are by an examination of the statutes.

The first extension of mail privileges was in favor of merchandise samples having no commodities value. The development further on was into the "parcels post" conventions. Admission to the foreign mail service was given to all articles of merchandise which could be lawfully carried in the domestic mails. The convention with which we are concerned was reached August 26, 1899, and carried into the laws of the United States on September 2, 1899. It is that between the United States and the German empire. 31 Stat. p. 1830. By its terms it is confined to mail matter, the exchange of which is therein provided for, and the arrangements under the universal postal convention are expressly retained.

The general definition of what shall be admitted to the mails is unlimited, except by the reference to what is mailable under the provisions of the law regulating the domestic service and by the specific exceptions noted. By the fourth article packages are subject to all the customs duties and regulations in force. The fifth article provides that the sender of the package must make a customs declaration in the form prescribed, giving, among other things, "an accurate statement of the contents and value" of the parcel. By article 6:

"The customs duties properly chargeable * ' * * shall be collected on delivery, in accordance with the customs regulations."

One of the requirements of article 7 is that a descriptive list of all packages sent shall accompany the mail in which dispatched, giving, among other things, "the declared contents and value." By the eighth article, as soon as the mail has reached its destination the contents shall be checked. Such other requirements as may be found necessary to carry out the provision of the convention may be made by the Postmaster General on behalf of the United States, in accordance with article 12. The exceptions in article 2 referred to relate only to weight, size, etc., and packages not admissible under the provisions of article 2 may be admitted under the provisions of article 12. For the purposes of this case, the limitations which are above stated may be considered the only limitations imposed upon what shall be admitted to the parcels post.

[3] The requirements made under the authority of article 12, if fairly within its scope and not destructive of the convention itself, must be deemed to be part of the law of the land. It may be further observed that while all packages are subject to the payment of customs duties, and the traffic itself to the customs regulations on the subject, and the collection of the customs duties is enjoined, the convention is silent on the subject of the consequences of an infraction of the revenue laws, and is without any reference to the criminal code or punitive statutes, or for forfeiture of any right of property or confiscation of any packages thus forwarded through the parcels post mails. Whatever provisions of this character can be extracted from this convention must therefore first be read into it from the customs laws and regulations. These laws and regulations are very drastic and highly penal, as they of necessity must be.

Certain of the customs requirements have been from time to time extended to the parcels post. Customs officers are detailed for service at the post offices and meet the mails on arrival. By T. D. 21698, in 1899, such officers were required to correct the valuations when inadequate, or supply them when omitted. Forms for this purpose are provided. Article 775 of the Customs Regulations of 1908 required accurate statements of contents and valuations. Article 815 exempted goods from seizure for undervaluations unless the packages contained cigars or cigarettes. Subsequently formal entry was required in certain cases. In 1909 parcels were limited to a value of $80, and entry required where the foreign market value exceeded that stated by more than 25 per cent., or where the value exceeds $100. In 1911 this entry was required, whether the goods were dutiable or not. We have

not been able, however, to find any provision for valuations under oath or other formalities, except such as would follow where formal entry was required. The act of 1909 provides for the forfeiture of all importations accompanied with an attempt to deprive the United States of its lawful duties.

The libel declares these goods to have been sent by parcels post, and to have been seized because of such fraudulent attempt, and prays process of forfeiture. Samuel Rubin, as claimant of the property, excepts to the information or libel upon the averments of which the forfeiture is declared, and by way of demurrer advances the proposition that no justifying reason for the seizure is set forth. Under the acts of Congress preceding that of 1909 it was held that goods arriving by parcels post were not liable to seizure for undervaluations in the descriptive statement required by the Mexican convention. Board of General Appraisers, T. D. 26664, G. A. 6132. This was because of the absence of those formalities which accompanied regular customs house entries.

[4-6] The case of United States v. 99 Diamonds, 139 Fed. 961, is authority, if any is required, for the proposition that no forfeiture can be declared, unless clearly imposed by the law. The exceptions are broadly based upon this proposition, and that the drastic provisions of the act of 1909 do not apply to goods sent by parcels post. The argument proceeds upon the omission of these provisions from the postal conventions, the policy of liberal treatment of such importations evidenced by the regulations of the Treasury Department, and the ruling that the earlier acts do not so apply. Counsel for the United States, conceding there could be no forfeiture under the former acts, earnestly contend that the Panama Hats Case rules that there may be under the act of 1909. We are unable to follow this argument to the conclusion reached. In the Panama Hats Case the importation was unclaimed by the consignee. In consequence of this the shipment went into a general order warehouse. Here it was open to claim and entry by the consignee at any time within 12 months. In the absence of such claim and entry, the goods were subject to sale at auction. No such claim was made. A forfeiture, it is true, was upheld in the absence of any formal entry; but there was the element of a formal consular invoice in triplicate and a valuation under oath in accordance with the requirements of the customs regulations. What was ruled was that what was done in this case constituted the prohibited "attempt to introduce merchandise into the commerce of the United States," which the act of 1909 visited with forfeiture as a consequence; there being the added guilt of a fraud upon the revenues. Here there was no valuation under oath, no formal invoice, or invoice of any kind, other than a supposititious bill of purchase, no requirement of a formal entry, and no sufficient averment in the libel that the goods were the proper subject of entry. There is an averment that the 18 packages had a value above $100, but the proper unit is the individual package, and not the entire number of packages. None of these had a value exceeding $80. The true value of some of them, as set forth, exceeds the value as given by more than 25 per cent.; but this does not render all subject to entry, nor subject all to forfeiture.

The conclusion reached is that, although the packages might be held for payment of the duty and may be liable to such added duties as the customs regulations prescribe, no justification for a forfeiture appears by the libel.

The exceptions are therefore sustained, and the libel dismissed.