## UNITED STATES *v.* NORD DEUTSCHER LLOYD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 611.   Argued January 12, 1912.—Decided February 19, 1912.

The object of § 19 of the Immigration Act of 1907, prohibiting the
owners of vessels from making any charge or receiving any security
for return passage of aliens brought to this country, was to carry
out a policy of preventing the transportation of aliens within the
excluded class by rendering it unprofitable instead of profitable for
the vessel-owner.

While a statute has no extra-territorial force, and one cannot be in-
dicted here for what he does in a foreign country, the making of a
contract in a foreign country may, as in this case, create a condition
operative in this country, under which acts of omission or commis-
sion can be punished here. *American Banana Co.* v. *United Fruit
Co.,* 213 U. S. 347, distinguished.

A vessel-owner taking security in a foreign country for the return
passage of aliens brought to a port of the United States violates
§ 19 of the Immigration Act of 1907, and the retention of the money
in the United States for the return passage is an offense at the place
where it is retained.

185 Fed. Rep. 158, reversed.

WRIT of error to review a judgment sustaining an in-
dictment charging the defendant with taking security and
making charge for the return passage of aliens unlawfully
brought into the United States and ordered to be returned
in pursuance of the Immigration Act of February 20, 1907.

The indictment charges that the Nord Deutscher Lloyd,
a German corporation, operated a line of steamers be-
tween Bremen and New York, maintaining an office and
place of business in both cities.   On November 25, 1910,
in Bremen, it sold tickets to two aliens entitling them to
passage to New York and return.   Before their embarka-
tion the defendant collected from them 150 rubles for the
return passage money in steerage.   On arrival in New

York the aliens were ordered to be deported to Germany as likely to become public charges, because of senility and inability to make a living.   On December 16, 1910, after the unlawful bringing into this country of said aliens, and while they were liable to deportation on the vessel by which they came, the said 150 rubles were still held and retained in possession of the defendant up to ·(April 3, 1911) the date of filing the indictment, "the defendant so holding and retaining the same and making charge thereof for the return of such aliens, and being taken and continuously held by the said defendant, as security from the said aliens, for the payment of such charge for their return passage to Germany ·aforesaid, in violation and evasion of § 19 of the Immigration Laws of the United States, approved February 20, 1907;   The defendant   .   .   .   by the means aforesaid, at and within the Southern ·District of New York, on December 16, 1910, unlawfully and wilfully did make charge for the return of aliens, so as aforesaid brought into this country in violation of law, and take security from them and keep and hold the same for the payment of such charge, then and there well knowing that such aliens had been brought to this country in violation of law."

The court sustained the demurrer on the ground that the money was paid and received in Germany, and that the facts did not amount to a violation of § 19, which provides "That all aliens brought to this country in violation of law shall, if practicable, be immediately sent back to the country whence they respectively came on the vessels bringing them.   The cost of their maintenance while on land, as well as the expense of the return of such aliens, shall be borne by the owner or owners of the vessels on which they respectively came."   And   ".   .   .   If such owner shall refuse   .   .   .   to pay the cost of their maintenance while on land, or shall *make any charge for the return of such alien, or shall take security from him for the*

*payment of such charge,* such owner shall be guilty of a misdemeanor."

*Mr. Assistant Attorney General Harr* for the United States:

The manifest purpose of the steamship company in taking, at Bremen, the 150 rubles as security for the return passage of Nuchim Dossik and his wife, was to evade the provisions of § 19 of the Immigration Act.

The statute should be construed so as to prevent this plain and palpable attempt to evade it.

Unless the indictment be sustained, the return charge will be made, and the purpose of the statute defeated. The presumption of intent to violate the statute became conclusive when the defendant, after the immigration authorities refused to admit the aliens, retained the security so taken.

The rule that penal statutes are to be strictly construed is qualified by the further one that such statutes are not to be so strictly construed as to defeat the obvious intention of the legislature. *United States* v. *Wiltberger,* 5 Wheat. 76, 95; *American Fur Co.* v. *United States,* 2 Pet. 358, 367; *United States* v. *Morris,* 14 Pet. 464, 475; *United States* v. *Hartwell,* 6 Wall. 385, 395; *United States* v. *Wong Kim Ark,* 169 U. S. 649, 653.

The statute covers a taking of security for a return charge made previous to the bringing of the aliens into this country, where the intent to defeat the manifest purpose of the statute exists, or to treat the retention of the security, under such circumstances, as a "taking."

The statute does not only undertake to punish a charge made or security taken within the territory of the United States. To so hold would be to nullify the statute entirely, because no charge need be made for the return passage of an alien until after he had departed from the United States. The statute is broad enough to cover a

charge made or security therefor taken before the service is rendered.

The service for which the charge is made or the security taken is performed partly within the territorial waters of the United States and partly on the high seas, either of which would be sufficient to give to this country jurisdiction of acts inhibited as contrary to its policies with respect to immigration or foreign commerce. The statute applies, and the authority of Congress can be upheld, as to acts occurring in a foreign jurisdiction which are intended to interfere with the legitimate operations of the Government or to defeat the exercise of its rightful powers. *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 356; *United States* v. *Craig,* 28 Fed. Rep. 795; *United States* v. *Lavarrello,* 149 Fed. Rep. 297.

The passenger acts undertake to regulate matters wholly beyond the jurisdiction of Congress except for the fact that the owners or masters of the vessels regulated bring themselves within our jurisdiction by attempting to introduce aliens into the country.

*Mr. Joseph Larocque* for defendant in error:

The section in question does not apply to an act done by an alien corporation in a foreign country. The section is penal and must therefore be strictly construed.

Even were it a question of doubt as to whether Congress intended to cover the case of a charge made or security taken from a person about to embark in a foreign country, the court in construing the section would be bound to exclude such an interpretation.

While a country may treat some relations between its own citizens as governed by its own law in regions subject to no sovereignty, like the high seas, or to no law recognized as adequate, the general rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where it is done.

A statute will, as a general rule, be construed as intended to be confined in its operation and effect to the territorial limits within the jurisdiction of the lawmaker, and words of universal scope will be construed as meaning only those subject to the legislation. *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347.

The indictment cannot be sustained upon the theory that it charges the commission of a continuing offense.

The act which the indictment charges to be an offense had its inception and completion at Bremen, Germany. This is not the case of an offense commenced within one jurisdiction and completed in another.

While the indictment alleges that the money in question was received and collected at Bremen, Germany, it does not allege that the said money was ever sent to this country or that it has ever been held or retained by the defendant within this jurisdiction.

Section 19 does not make it a misdemeanor to make a charge or receive security from an alien in a foreign country, or to bring into this country a non-admissible alien from whom money or security therefor has been received abroad for his return passage.

Congress intended to prohibit a shipowner from exacting from an alien, who has been brought to this country in violation of law, money for his return.

If Congress had intended to make it a misdemeanor for a shipowner to retain moneys previously received abroad from an alien for his return passage, it could easily have done so in clear and concise terms.

None of the authorities cited by the learned government counsel has any bearing upon the question at issue.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

Section 19 of the Immigration Act of 1907 (February 20,

1907, 34 Stat. 898, 904, c. 1134), is not aimed at the aliens of the excluded class, but at the owners of vessels unlawfully bringing them into this country. The Government might in large measure protect itself by inspection, rejection and order of deportation, but it is purposed, also, as far as possible, to protect the alien. He might be ignorant of our laws and ought to be deterred from incurring the expense of making a passage which could only end in his being returned to the country from whence he came. This policy could best be subserved by securing the cooperation of the transportation companies, and to this end the statute required that they should not only maintain the aliens unlawfully brought by them into this country, but should take them back free of charge. In the absence of this last provision the company might well afford to accept as passengers those known or suspected to belong to the excluded class. It would receive from them their passage money from Europe to America. If they passed the inspection the transaction was ended. If they were deported the company would be at the trifling expense of maintaining them while here. But if it could charge and secure payment for the return passage, it would collect two fares instead of one. This would have made the transportation of an excluded alien more profitable than the carrying of one who could lawfully enter. This was so obvious that the statute not only required the cost of their passage to be borne by the transportation company, but prohibited the making of a charge, or the taking of security for the return passage, which might be collected or enforced at the end of the journey.

It is said, however, that no such charge was made in New York; that the indictment shows only the case of an ordinary sale of a round-trip steerage ticket from Bremen to New York, and that what was lawfully done in Germany cannot be punished as a crime in New York.

The statute, of course, has no extra-territorial opera-

tion, and the defendant cannot be indicted here for what he did in a foreign country. *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347. But the parties in Germany could make a contract which would be of force in the United States. When, therefore, in Bremen, the alien paid and the defendant received the 150 rubles for a return passage they created a condition which was operative in New York. If, in that city, the company had refused to honor the ticket the alien could there have enforced his rights. In like manner, if by reason of facts occurring in New York, the statute operated to rescind the contract, the rights and duties of the parties could there be determined, and acts of commission or omission, which, as a result of the rescission, were there unlawful, could there be punished.

If, as argued, the company did nothing in New York except to retain money which had been lawfully paid in Germany, the result is not different, because, under the circumstances, non-action was equivalent to action. The indictment charges that on December 16, 1910, it was found that the aliens had been unlawfully brought into this country. The company at once was under the duty of taking them back at its own cost. Instead of returning to them the money previously received for such transportation, the defendant retained it up to the date of the indictment, April 3, 1911, with intent to make charge and secure payment for their passage to Bremen. This retention of the money, with such intent, was an affirmative violation of the statute. The company could not take the aliens back free of charge, as required by law, and at the same time retain the fare covering the same trip.

The demurrer admits that, with knowledge that it was bound to carry the excluded aliens back at its own cost, the defendant in New York made a charge, and retained the 150 rubles with intent to apply that money in satisfaction thereof. If that be true the defendant violated

the statute within the Southern District of New York, and can there be indicted and tried. The judgment must therefore be

*Reversed.*