## COMPAGNIE GÉNÉRALE TRANSATLANTIQUE v. AMERICAN TOBACCO CO.

Circuit Court of Appeals, Second Circuit.
April 1, 1929.

No. 256.

Joseph P. Nolan, of New York City (Anthony J. Ernest, of New York City, of counsel), for plaintiff in error.

Jonathan H. Holmes, of New York City (John David Lannon, of New York City, and Clinton Robb, of Washington, D. C., of counsel), for defendant in error.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. A verdict was directed below upon a reparation award made by the United States Shipping Board for damages suffered from discrimination in freight charges in foreign commerce, in import trade on cigarette paper. The defendant in error was the purchaser and consignee of this paper, shipped by the sellers from France and carried by the plaintiff in error's steamships to New York. There were 279 shipments between April 7, 1919, and January 3, 1921, for which freight charges were named on a basis of five francs to the United States dollar in New York. During the same period on prepaid shipments of identical commodities carried for competitors of the defendant in error, the carrier accepted payment in francs of freight charges at the current rate of exchange. This resulted in the defendant in error paying more than its competitors for transportation of the same character of commodity from and to the same ports.

Before action in the court below, a complaint was filed with the Shipping Board un-

der the provisions of Shipping Act 1916, § 22 (46 USCA § 821), and an award was made bearing interest in favor of the defendant in error. Failure to pay this award after demand resulted in this action below (section 30 of the Shipping Act [46 USCA § 829]). Section 30 of the Shipping Act provides that the findings and order of the board shall be prima facie evidence of the facts therein stated. Certified copies of these, together with a certificate, showing the plaintiff in error was authorized to do business in New York, and a computation of interest, constitute defendant in error's proof. The plaintiff in error offered no evidence. This was sufficient upon which to base a recovery. In Meeker v. L. V. R. Co., 236 U. S. 412, 35 S. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691, the Supreme Court, in considering the findings and order of the Interstate Commerce Commission, announced that they constituted prima facie evidence of the facts therein stated and that this was not repugnant to the Constitution, for it did not infringe upon the right of trial by jury or operate as a denial of due process of law. The court said:

"This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most therefore it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents. Nor does it in any wise work a denial of due process of law. In principle it is not unlike the statutes in many of the states whereby tax deeds are made prima facie evidence of the regularity of all the proceedings upon which their validity depends. Such statutes have been generally sustained [citing cases]."

The board held, after a hearing at which the plaintiff in error had full opportunity to be heard, that from a consideration of the facts in evidence the freight charges collected were unduly prejudicial to the defendant in error, unduly preferential of its competitors, and unjustly discriminatory between shippers, and were in violation of sections 16, 17, of the Shipping Act (46 USCA §§ 815, 816) to the extent that they exceeded the prepaid charges on like shipments from and to the same ports, plus such additional costs as the defendant in error was compelled to absorb over and above those accruing in connection with prepaid shipments.

Congress was authorized by the Constitution to regulate commerce with foreign nations and among the several states (Consti-

tution, art. 1, § 8, cl. 3), and pursuant to such authority it passed the Shipping Act. It is by its terms unlawful for any common carrier by water—which includes a carrier in foreign commerce, as well as a carrier in interstate commerce—to give any undue or unreasonable preference or advantage, or to subject any person to any undue or unreasonable prejudice or disadvantage in any respect whatsoever, and no carrier by water in foreign commerce may demand, charge, or collect any rate freight or charge which is unjustly discriminatory between shippers. In case of a violation, the person injured may make a complaint to the Shipping Board and ask for reparation, and after a hearing the board has the authority to make findings and an order directing such reparation, and the same are to be prima facie evidence in any action in the District Court of the United States of the facts therein stated. Sections 16, 17, 22, 30. As under the Interstate Commerce Act, where power is given to the Commission to enforce reasonable rates in interstate commerce, section 18 of the Shipping Act (46 USCA § 817) gives a power relative to the enforcement of reasonable rates over carriers by water in interstate commerce, and power with regard to foreign commerce to award damages in case of undue and unreasonable preference or advantage or unjust discrimination. This remedy did not exist at common law, but is statutory.

A steamship company engaged in foreign commerce, with ships entering the United States ports in such commerce, is within the obligation of the Shipping Act, and the fact that the bill of lading was issued in France does not exclude it. Such a carrier is as much subject to this statute, passed in regulation of foreign commerce, as it is to the terms of the Harter Act (46 USCA §§ 190–195), the Immigration Act, and the Seamen's Act. Bills of lading issued in foreign commerce, since the effective date of the Harter Act, are governed by its express provisions. Knott v. Botany Worsted Mills, 179 U. S. 69, 21 S. Ct. 30, 45 L. Ed. 90. There the court said:

"The * * * question is whether the first section of the Harter Act applies to a foreign vessel on a voyage from a foreign port to a port of the United States. The power of Congress to include such cases in this enactment cannot be denied in a court of the United States."

In Strathearn S. S. Co. v. Dillon, 252 U. S. 348, 40 S. Ct. 350, 64 L. Ed. 607, the constitutionality of the Seamen's Act, as far as

it might interfere with contractual rights upon engagements legally made in foreign ports, was considered. The statute was made applicable to seamen on foreign vessels when in American ports. The provision authorizing seamen to demand and receive one-half of the wages earned in any port where the vessel, after a voyage had commenced, should load or discharge cargo, notwithstanding any contractual obligation to the contrary, was considered. The court said:

"We come, then, to consider the contention that this construction renders the statute unconstitutional, as being destructive of contract rights. But we think this contention must be decided adversely to the petitioner upon the authority of previous cases in this court. The matter was fully considered in Patterson v. The Eudora, 190 U. S. 169, 23 S. Ct. 821, 47 L. Ed. 1002, in which the previous decisions of this court were reviewed, and the conclusion reached that the jurisdiction of this government over foreign merchant vessels in our ports was such as to give authority to Congress to make provisions of the character now under consideration; that it was for this government to determine upon what terms and conditions vessels of other countries might be permitted to enter our harbors, and to impose conditions upon the shipment of sailors in our own ports, and make them applicable to foreign as well as domestic vessels. Upon the authority of that case, and others cited in the opinion therein, we have no doubt as to the authority of Congress to pass a statute of this sort, applicable to foreign vessels in our ports, and controlling the employment and payment of seamen as a condition of the right of such foreign vessels to enter and use the ports of the United States."

In Jackson v. S. S. Archimedes, 275 U. S. 463, 48 S. Ct. 164, 72 L. Ed. 374, the court referred to the Dillon Case, and again held that Congress had clearly the right to legislate as to foreign vessels while in the waters of the United States, and concluded that a common carrier by water in foreign commerce meant a carrier whether engaged in import or export trade. In United States v. Nord Deutscher Lloyd, 223 U. S. 512, 32 S. Ct. 244, 56 L. Ed. 531, it was held that a foreign steamship company, which lawfully collected in Germany a return passage money for immigrants embarking for the United States, violated a provision of the Immigration Act against making any charge for the return of aliens unlawfully brought into the United States, where the steamship company retained the money with the intent to make the charge and secure payment for the return voyage.

Indeed, a lawful statute in force at the time the contract was made is read into the contract and becomes part of it. Armour Packing Co. v. United States, 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681. And the power of Congress to regulate also extends to and embraces the right to control the contract power of the carrier, in so far as the public interest requires such limitation. It is often manifested in bills of lading and tariffs. Wilson v. New, 243 U. S. 332, 37 S. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024. Parties are free to contract with the carrier, but are subject to the rule which prohibits discrimination. L. & N. R. Co. v. Cent. Iron & C. Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900. The argument, therefore, that the Shipping Act does not apply, because the contract was made in France and that it may not be nullified by statute, is without support in principle or authority. Such a contract must be and is deemed to be modified to conform to the statute in so far as it affects the performance thereof in this country. And since this was import trade, the statute of Congress is presumed to be part thereof. In News Syndicate Co. v. N. Y. Central R. Co., 275 U. S. 179, 48 S. Ct. 39, 72 L. Ed. 225, the Supreme Court pointed out that there was no finding that the charges for transportation, in so far as they took place within the United States, were unjust and unreasonable, but it sustained the jurisdiction to make an order for the payment of damages to the shipper or consignee to the amount of the entire transportation charges on the basis of a through rate, exceeding the charges which would have been assessed on the basis of a joint rate found by the Commission to be reasonable.

But it is argued that sections 16, 17, of the Shipping Act are inapplicable here. Section 16 applies to any common carrier by water, which includes foreign commerce. Although section 17 refers specifically to a common carrier by water in foreign commerce, the argument is that section 16 does not apply here. Apparently section 16 makes unlawful certain things to a common carrier by water applying without limitation to either clause and section 17 refers to common carriers by water in foreign commerce. This section is directed toward the prohibition of discriminatory rates, and is to be distinguished from section 18, which applies to common carriers by water in interstate commerce, as to which the powers of the board are somewhat broader. Section 16 forbids undue and un-

reasonable prejudice or disadvantage in any respect whatever arising in foreign commerce or interstate commerce by water, and this language is sufficient to cover any case of undue or unreasonable prejudice or disadvantages in water rates or otherwise. The Shipping Act was fashioned after the Interstate Commerce Act. The defendant in error who paid the freight is the claimant entitled to receive the damages. Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451. "Shipper," as used in the act, means the owner or person for whose account the carriage of the goods is undertaken. Spiller v. Atchison, etc., R. Co., 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810; Pittsburgh, etc., R. Co. v. Fink, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151.

Nor is the argument sound that the case at bar is one to recover an excessive charge under a mistake of law or fact. It is not an action for overcharge. It is for damages due to discrimination. The defendant in error denied knowledge of the lower charges to competitors. The plea of estoppel may not be invoked upon the theory of knowledge by the defendant in error. Louisville & Nashville R. Co. v. Central Iron & Coal Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900; Pittsburgh, etc., R. Co. v. Fink, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151. The plaintiff in error, although free to make answer to the claim of unjust discrimination in the court below, as found by the Commission, contends now that there was no evidence of discrimination or unreasonable rates, and that the collection of five francs to the dollar when francs were worth but 10 cents does not amount to discrimination. Discrimination, as used in the Elkins Act (49 USCA §§ 41–43), was held to have been made where the shipper was permitted to settle his charges by paying a lesser or different compensation to the carrier. United States v. Sunday Creek Co. (D. C.) 194 F. 252. The acceptance of notes for part of the freight charges was held to be a discrimination against shippers not so favored. U. S. v. Hocking Valley R. Co. (D. C.) 194 F. 234.

The question whether charges are reasonable or otherwise, whether certain discriminations were due or undue, are questions of fact, to be passed on in the light of all the facts duly alleged and supported by competent evidence. Texas & Pacific Ry. Co. v. Interstate Commerce Comm., 162 U. S. 197, 16 S. Ct. 666, 40 L. Ed. 940. When the plaintiff in error failed to make answer to the prima facie evidence offered by the defendant in error by the introduction of the order of the Commission and the findings upon which it was based, it was the duty of the court below to direct the verdict as entered.

Judgment affirmed.