## LAMPORT & HOLT, Limited, v. ELTING, Collector of Customs.

### No. 14.

Circuit Court of Appeals, Second Circuit.

April 3. 1933.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellant.

John M. Lyons, of New York City (Mark E. Cymrot, of New York City, of counsel), for plaintiff-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Ena Watson, an alien, who was a British subject and a native of Barbadoes, was brought to the United States by the plaintiff steamship company as a passenger. She was in possession of a temporary nonimmigrant visé issued by the American consul at Barbadoes which described her as a temporary visitor. She presented evidence at the consulate that she was coming to the United States for the purpose of obtaining medical attention, and there is nothing to negative the good faith of her application. Prior to obtaining this visé she had received the following information from W. W. Husband, Second Assistant Secretary of Labor in answer to an inquiry from one L. H. Grant made on her behalf:

"Mr. L. H. Grant, 311 6th Avenue, Brooklyn, New York.

"Sir: In reply to your letter of March 25, addressed to the Secretary, please be advised that if Miss Ena M. Watson desires to come to the United States for a temporary stay, she should apply to the American consul in the district wherein she resides, for a passport visa, submitting evidence of her status as a bona fide visitor. The American Consuls, who are officers of the Department of State, have complete control over issuing all visas.

"An applicant for admission to this country does not come within the Jurisdiction of this Department until she actually arrives at a United States port. It cannot be determined prior to such arrival how long a visitor may be permitted to remain in the United States. * * *"

Upon reaching New York, the alien was examined by a Board of Special Inquiry who certified that she was feeble-minded and that this condition "might have been detected by a competent medical examination at the port of embarkment." The Department of Labor thereupon issued an order of exclusion, and the Secretary of Labor imposed upon the steamship company a fine of $1,000, plus $58 to be returned to the alien as a refund of passage money, pursuant to section 9 of the Immigration Act of 1917, as amended by the Immigration Act of 1924, § 26 (8 USCA § 145). These sums were paid under protest, and are sought to be recovered in this action. There is no claim by the plaintiff that the condition of the alien might not have been

detected at the port of embarkation or that there was any attempt made to detect it.

Reliance is placed on the fact that the alien was seeking "temporary admission," and it is said that, because of this, she was not within the classes of excluded aliens in respect to whose importation the penalties imposed by amended section 9 of the Immigration Act referred. The last clause of amended section 9 says: that "nothing contained in this section shall be construed to subject transportation companies to a fine for bringing to ports of the United States aliens who are by any of the provisions or exceptions to section 136 [3 hereof] of this title exempted from the excluding provisions of said section."

Section 3 of the act (8 USCA § 136), after providing that "feeble-minded" persons as well as numerous other classes of aliens shall be excluded from admission, sets forth various exceptions to these excluded classes, and adds: "Provided further, That the Commissioner General of Immigration with the approval of the Secretary of Labor shall issue rules and prescribe conditions, including exaction of such bonds as may be necessary, to control * * * the admission and return of otherwise inadmissible aliens applying for temporary admission."

But this proviso in section 3 does not exempt "feeble-minded" persons from the classes excluded by that section merely because they seek "temporary admission," and the Department may admit them temporarily. It is true that some language in Compagnie Generale Transatlantique v. United States (C. C. A.) 51 F.(2d) 1053, at page 1056, would seem to preclude a fine where an alien is brought for temporary admission, but it was not necessary for the decision of the case, and a different view has been taken by the Supreme Court in Elting v. North German Lloyd, 287 U. S. 324, 53 S. Ct. 164, 77 L. Ed. ——. In Compagnie Generale Transatlantique v. United States, the aliens were admitted.

At the time the alien came to the United States, the following regulation had been adopted by the Commissioner General of Immigration, with the approval of the Secretary of Labor (Rule 12, subdivision B, of the Immigration Rules of July 1, 1925):

"*Temporary Admissions.* Paragraph 1.— Aliens mandatorily excluded and seeking temporary admission from foreign contiguous territory for the purpose of undergoing medical or surgical treatment in the United States may be admitted for such purpose when it appears to the satisfaction of the immigration officer in charge that an emergency exists for immediate medical or surgical aid: Provided, that such alien shall furnish satisfactory guaranty or a bond with approved surety in the penal sum of not less than $500 conditioned that he will depart from the United States when such medical or surgical treatment is completed. * * * All other applications for temporary admission made by the mandatorily excluded class not herein provided for shall be submitted to the Department for special ruling."

Because the right to enter of persons who come for "temporary admission" cannot be determined until the Commissioner has exercised his discretion, it is argued that a steamship company bringing them to our shores ought not to be subjected to penalties. But in Elting v. North German Lloyd the alien came with a visé that showed on its face that he sought admission to the United States only temporarily for business purposes. We had held in that case [54 F.(2d) 997] that, under those circumstances, the steamship company was not liable to a fine. But the Supreme Court reversed our decision and declined to sanction a recovery by the steamship company of the penalties imposed under section 6 of the Quota Act of 1921, as added by Act May 11, 1922, § 3 (42 Stat. 540). Section 6 was the section in effect at the time when the penalties were imposed in Elting v. North German Lloyd, supra, and corresponded with amended section 9 under consideration here. Justice Stone, writing for the court, said:

"We do not think it can be said, in the face of the explicit language of the statute, that the respondent could lawfully bring the alien, because he lawfully might come to the United States. The statute imposes no penalty upon the alien for coming beyond the possible denial of his application to enter. But it does declare that it shall be unlawful for the steamship company to bring him if 'not admissible,' as was the case, and imposes the penalty if the Secretary finds, as he did, that an inadmissible alien has been brought. In plain terms, the act placed on respondent the burden of acting at its peril that the fine might be imposed in the case of this alien, as with any other, if the event should prove that he was inadmissible." Elting v. North German Lloyd, 287 U. S. at page 327, 53 S. Ct. 164, 166, 77 L. Ed. ——.

In North German Lloyd v. Elting (C. C. A.) 48 F.(2d) 547, 549, which was a different litigation from the above case decided by the

Supreme Court, Judge Swan discussed the question whether bringing to the United States an alien who had physical defects which might have been detected by the steamship company with the exercise of reasonable diligence would subject the company to a fine, if the alien was rejected. It was there argued, as it is here, that it would not, because under section 21 he might be admitted in the discretion of the Secretary of Labor, and therefore had a right to come in order to present his evidence. But Judge Swan said that section 9 "'is not aimed at the aliens of the excluded class, but at the owners of vessels unlawfully bringing them into this country.' United States v. Nord Deutscher Lloyd, 223 U. S. 512, 517, 32 S. Ct. 244, 245, 56 L. Ed. 531," and that "Section 21 * * * on the other hand, deals with aliens liable to be excluded * * * because of physical disability (excepting certain named diseases), and says nothing concerning the owners of vessels who bring such aliens to this country." We held that section 21 of the Act of 1917 (8 USCA § 158) did not add to the list of aliens exempted from exclusion merely because it gave the Secretary discretion to admit in certain cases aliens otherwise excluded. The fines which had been imposed were accordingly sustained.

It seems clear from the foregoing that the steamship company brought the alien to the United States at its own risk, and that the penalties were regularly imposed pursuant to the statute and cannot be recovered.

Judgment reversed.