**NORMAN G. JENSEN, INC., a Minnesota corporation, Petitioner,**

v.

**FEDERAL MARITIME COMMISSION, Respondent.**

**No. 73–1514.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1974.

Decided June 5, 1974.

Joe A. Walters, Minneapolis, Minn., for petitioner.

William H. Smith, Jr., Atty., Federal Maritime Comm., Washington, D. C., for respondent.

Before MEHAFFY, Chief Judge, and GIBSON and WEBSTER, Circuit Judges.

MEHAFFY, Chief Judge.

Norman G. Jensen, Inc., a Minnesota corporation, has petitioned this court to review and set aside a report and final order of the Federal Maritime Commission. The report and order in question allowed Jensen to retain its license as an independent ocean freight forwarder, but only on the condition that Jensen immediately terminate all relations with International Traders and Counsellors, Inc. (hereinafter "ITC"). Norman G. Jensen, Inc.—Independent Ocean Freight Forwarder License No. 800,

Docket No. 70–45 (June 13, 1973). The Commission's decision was based upon its conclusion that Jensen was not an "independent ocean freight forwarder" within the meaning of 46 U.S.C. § 801, and that Jensen's relationship with ITC constituted a violation of § 16 of the 1916 Shipping Act (46 U.S.C. § 815). For reasons hereinafter set forth we disagree and set aside the order.

Norman G. Jensen, Inc. (hereinafter "Jensen") is primarily engaged in the business of serving as a customhouse broker. In such capacity Jensen acts as an agent for persons importing goods into the United States from foreign countries. Jensen also serves as an air-cargo agent in arranging for the transportation of goods being exported by air carrier. The third and smallest area of Jensen's activities is ocean freight forwarding.[1] It is only this last area with which we are involved here.

Jensen registered with the Commission in 1950 as an ocean freight forwarder and in 1961, following enactment of the Freight Forwarder Law, applied for and was granted a forwarder's license. The term "carrying on the business of forwarding" is defined by the relevant statute as meaning "the dispatching of shipments by any person on behalf of others, by ocean-going common carriers in commerce from the United States, * * * and handling the formalities incident to such shipments." 46 U.S.C. § 801.

ITC, also a Minnesota corporation, functions as a service enterprise for, primarily, only four clients. The services performed by ITC consist of making arrangements for transportation to port, preparing export declarations, consular invoices and related documents, translating documents, receiving purchase orders and payments, preparing commercial invoices and inventory reports, investigating credit, and selecting freight forwarders. Whenever any of ITC's clients need the services of an ocean freight forwarder, ITC selects Jensen unless its client or consignee has some contrary preference. ITC is paid for its services either a fee on a retainer basis, an amount equal to 10% of the price of the goods shipped, or a transactional service charge plus the 10% fee. Jensen is connected with ITC through common ownership and interlocking officers and directors.[2]

In October 1969 the Commission conducted an investigation into Jensen's status and activities. As a consequence of the investigator's report the Commission instituted a proceeding pursuant to 46 U.S.C. §§ 821, 841b to determine whether Jensen continued to qualify as an independent ocean freight forwarder and whether Jensen had violated 46 U. S.C. § 815 by virtue of its relationship with ITC. After an evidentiary hearing held in March 1971, the hearing examiner concluded that: (1) Jensen was not independent because it directly or indirectly controlled and/or was controlled by ITC, a person who was shipper connected and, in addition, had a beneficial interest in shipments to foreign countries; (2) this relationship with ITC was in violation of 46 U.S.C. § 815; (3) Jensen's relationship with ITC was willfully concealed from the Commission by

---

1. Income from ocean freight forwarding services accounted for only five percent of Jensen's gross revenues in 1970.

2. When the Commission commenced this investigation, Jensen's 150 shares of outstanding stock were owned as follows: Norman G. Jensen II and family—74 shares; Gordon W. Jensen and wife—74 shares; Bent Jensen (unrelated to the other shareholders)—2 shares. Jensen's officers were Gordon W. Jensen, President and Treasurer, and Bent Jensen, Vice President and Secretary. ITC was owned 50% by Bent Jensen and wife and 50% by Gordon Jensen. Bent Jensen was President and Director of ITC and Gordon W. Jensen a Director and its Secretary and Treasurer.

During pendency of review by the Commission these relationships were altered so that the remaining connection between Jensen and ITC is only via Bent Jensen. Bent Jensen is now the sole shareholder of ITC. He also owns 2 shares of Jensen and continues to serve as an Officer and Director of Jensen.

falsification of its application for the license; and (4) Jensen's license as an independent ocean freight forwarder should be revoked.

Jensen filed exceptions to the examiner's decision and on June 15, 1973 the Commission entered its decision in the form of a report and order. A majority of three Commissioners agreed to adopt the trial examiner's conclusions (1) and (2) above. As to conclusions (3) and (4), the Commission held that the record did not justify a conclusion of "willful" falsification of the license application, and decided that Jensen should be allowed the opportunity to eradicate the control connections with ITC as an alternate to revocation of its license. The Commission has stayed execution of its order until judicial review has been completed. This court is given jurisdiction under 28 U.S.C. § 2342 to review the Commission's final order.

The issues which are dispositive of this petition can be simply stated: First, whether Jensen is sufficiently independent to come within the definition of "independent ocean freight forwarder" as set forth in 46 U.S.C. § 801; and, secondly, whether Jensen's relationship with ITC has resulted in the payment by shippers of reduced shipping charges which would constitute a violation of § 16 of the 1916 Shipping Act.

*Independent Ocean Freight Forwarder.*

. [1] Most forwarders derive their income from two sources. They receive compensation from shippers for the services provided them and brokerage payments from ocean carriers. While a carrier may properly pay brokerage fees to licensed ocean freight forwarders, the 1916 Shipping Act was enacted to prohibit a carrier from making any rebates to shippers. If the freight forwarder is a "dummy", *i. e.*, owned or controlled by a shipper, the otherwise innocent bro-

kerage fee will result in the unlawful rebate situation because the fee inures to the benefit of the shipper. The Freight Forwarder Law was designed to prevent such abuse by requiring a forwarder to be independent of any shipper.[3] The statute defines "independent ocean freight forwarder" as:

> [A] person carrying on the business of forwarding for a consideration who is not a shipper or consignee or a seller or purchaser of shipments to foreign countries, nor has any beneficial interest therein, nor directly or indirectly controls or is controlled by such shipper or consignee or by any person having such a beneficial interest.

46 U.S.C. § 801.

The statute further defines "person" to include a corporation. *Id.*

There is no doubt that Jensen is engaged in the business of ocean freight forwarding. The issue is whether Jensen is "independent." The Commission's order is based in part upon its conclusion that Jensen is not independent. This conclusion, in turn, is premised upon its determination that (1) ITC is a shipper or is "shipper-connected" and has a beneficial interest in the shipments which it services, and (2) that ITC controls, or is controlled by, Jensen.

■■ Although the Commission concluded that Jensen is not independent because ITC is a shipper, the facts of the case plainly show the contrary. The term "shipper," as used in the Act, is not defined but is commonly understood to mean the owner or person for whose account the carriage of the goods is undertaken. Compagnie Générale Transatlantique v. American Tobacco Co., 31 F. 2d 663 (2d Cir.), cert. denied, 280 U.S. 555, 50 S.Ct. 16, 74 L.Ed. 611 (1929). The Commission, however, does not contend that ITC was the owner of the shipments which it serviced; therefore

---

3. The Commission suggests that the Freight Forwarder Law had as a broader purpose the creation of a fiduciary standard for the forwarding industry. However, the language of the statute does not support that conten- tion and a fiduciary standard would seem to be inherently inappropriate inasmuch as a forwarder receives compensation from both shipper and carrier.

this situation is clearly distinguishable from the dummy-forwarder cases with which the Commission has dealt on previous occasions. Application for Freight Forwarding License—York Shipping Corp., 9 F.M.C. 72 (1965); Application for Freight Forwarding License—Wm. V. Cady, 8 F.M.C. 352 (1964); Application for Freight Forwarding License—Louis Applebaum, 8 F.M.C. 306 (1964). In those cases the forwarder was controlled or owned by persons who were obviously "shippers." The shipments in the instant case were undertaken for the account of ITC's shipper-clients, not for ITC which simply assisted in arranging for their shipment. We hold that ITC was not a shipper with regard to the shipments here involved.

■ The hearing examiner's conclusion that ITC is "shipper-connected," while possibly accurate depending on how the term is defined, lacks any significance. It is undisputed that ITC is connected with its shipper-clients because it does render services to them for a fee. Any forwarder, for that matter, who renders services to a shipper-client will be "shipper-connected." This association, however, would not affect Jensen's status as an independent ocean freight forwarder under the definition set forth in the Freight Forwarder Law even assuming, arguendo, that Jensen controlled, or was controlled by, ITC. Jensen's status, for that purpose, would be affected only if ITC was a shipper or consignee or a seller or purchaser of shipments to foreign countries, or had a beneficial interest in such shipments. The hearing examiner's conclusion that ITC is "shipper-connected," therefore, has no relevance to the issue of whether Jensen is an independent freight forwarder.

■ The decision of the examiner that ITC had a beneficial interest in the shipments which its shipper-clients made to foreign countries was also adopted by the Commission. If that conclusion was correct, and again assuming, arguendo, that the necessary control was present, Jensen would not qualify as an independent ocean freight forwarder. Jensen contends that ITC possessed no such beneficial interest. The term "beneficial interest" is not defined by the statute but its traditional meaning is understood to be the right to the use and enjoyment of property. This interest is normally owned by the legal title holder but by agreement or operation of law can be placed in another.

■ The Commission maintains that the term "beneficial interest" is susceptible to a broader definition—one which would include ITC's relationship with its clients' shipments. The Commission's argument is two-pronged. It contends that inasmuch as ITC is compensated for its services by three of its four clients on the basis of a percentage of the value or proceeds of the goods exported, ITC has a beneficial interest in the shipments. The Commission further contends that the authority given ITC by its shipper-clients in the handling of their shipments was a proprietary right which also constituted a beneficial interest. The benefit to ITC would be the forwarding business which it could direct to Jensen.

The rules and regulations promulgated by the Commission under the authority of 46 U.S.C. § 841a sought to define this term:

> The term "beneficial interest" for the purpose of these rules includes, but is not limited to, any lien interest in, right to use, enjoy, profit, benefit, or receive any advantage, either proprietary or financial, from; the whole or any part of a shipment or cargo, arising by financing of the shipment or by operation of law or by agreement, express or implied, provided, however, that any obligation arising in favor of a licensee by reason of advances of out-of-pocket expenses incurred in dispatching of shipments shall not be deemed a beneficial interest.

46 C.F.R. § 510.21(*l*).

The purpose served in excluding persons with a beneficial interest in a ship-

ment from the definition of an "independent ocean freight forwarder" becomes more obvious in the context of its legislative background.[4] By so defining the term Congress intended to preclude the possibility of another form of an unlawful rebate situation. Such indirect rebate could result if brokerage fees found their way into the hands of those who indirectly bear the freight charges, e. g., where a forwarder acquires by purchase, or becomes otherwise entitled through financing arrangements to, the right to share in the profit from a shipment and at the same time receives a brokerage fee from the carrier. The Second Circuit has likewise viewed Congress' intent in requiring an independent ocean freight forwarder to be free of any beneficial interest in a shipment. New York Foreign Freight Forwarders & Brokers Ass'n v. Federal Maritime Commission, *supra*. The court's opinion contained this statement:

> A forwarder licensee must be "independent"—free of any affiliation with a shipper, consignee, seller, purchaser of the shipment, or *with any person having a beneficial interest in the goods*, 46 U.S.C. § 801—*in order to eliminate indirect rebates to shippers*. (Emphasis added.)

337 F.2d at 293.

The prohibited beneficial interest, therefore, must be something more than that which JTC has in this case because ITC's relationship to the goods could not give rise to an indirect rebate. Consequently, we hold that neither the manner of computation of ITC's fee nor the discretion which ITC has exercised in some cases in the selection of a forwarder constitutes a beneficial interest within the meaning of the statute or reasonable intendment of the rules promulgated thereunder.

Inasmuch as the Commission's conclusions that ITC was a shipper and had a beneficial interest in the shipments were made in error, it is not necessary that we review the Commission's conclusion that Jensen controlled, or was controlled by, ITC.

*Violation of § 16.*

■ The hearing examiner's conclusion that Jensen's relationship with ITC was in violation of § 16 of the Act was also adopted by the Commission. The examiner's decision was obviously based on the provision in § 16 which makes it unlawful for a forwarder, by an unfair or unjust device, to obtain transportation at less than the rates or charges otherwise applicable. The examiner explained his decision on this issue by stating that a forwarder who has any beneficial interest in a shipment and accepts brokerage thereon is guilty of accepting a rebate in violation of § 16. As discussed above, we hold that ITC had no beneficial interest in the shipments of its shipper-clients. We therefore cannot agree with a finding of a violation of § 16 on that basis.

■ The Commission urges this court to sustain its conclusion on the alternate ground that § 16, Second, was violated. Section 16, Second, provides that it shall be unlawful to directly or indirectly "allow" any person to obtain transportation at less than regular rates or charges through any unjust or unfair device or means. The Commission maintains that Jensen has indirectly allowed ITC's shipper-clients to obtain lower transportation rates. American Union Transport, Inc. v. United States, 103 U.S.App.D.C. 229, 257 F.2d 607, cert. denied, 358 U.S. 828, 79 S.Ct. 46, 3 L.Ed.2d 67 (1958); Brokerage on Ocean Freight—Max LePack et al., 5 F.M.B. 435 (1958). The rationale employed by the Commission is as follows: Jensen received $100.00 in 1969 and $185.00 in 1970 in the form of brokerage fees from carriers incidental to the forwarding of shipments owned by ITC's shipper-clients. ITC is subsi-

---

4. See New York Foreign Freight Fowarders & Brokers Ass'n v. Federal Maritime Commission, 337 F.2d 289 (2d Cir. 1964), for a review of the legislative and historical background of the Freight Forwarding Law and the forwarding industry.

dized by Jensen through the compensation which Jensen pays to the operations officer of ITC. This subsidy must have included some portion of the above $285.00 of brokerage fees. ITC is thus able to provide services to its shipper-clients at a lesser charge than would have been possible without the subsidy from Jensen, *ergo*, the $285.00 has found its way back to ITC's shipper-clients and the arrangement results in an unfair or unjust device for obtaining reduced transportation charges. Although the logic of the argument appears somewhat palpable, it lacks any real merit. This same rationale would require the finding of a violation of § 16 any time a shipper employs an ocean forwarder because it is more economical than maintaining its own forwarding staff. It would strain the words of the statute too far without furthering any of the objectives for which the Act was designed to serve to find a violation in this situation. We hold that the Commission's conclusion that Jensen's relationship with ITC effected a violation of § 16 of the Act was made in error.

The decision and order of the Federal Maritime Commission are set aside.