# UNITED STATES *v.* TWENTY–FIVE PACKAGES OF PANAMA HATS.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 257.   Argued October 30, 1913.—Decided December 1, 1913.

The expression—to attempt to introduce into the commerce of the United States—includes more than to attempt to enter merchandise, and as used in the act of August 5, 1909, c. 6, 36 Stat. 11, 97, it covers fraudulent invoices made by consignors in foreign countries.

As statutes have no extraterritorial operation, a consignor making a fraudulent invoice in a foreign country cannot be punished therefor, but the goods being within the protection and subject to the commercial regulations of this country can be subjected to forfeiture for the fraudulent attempt to introduce them.

While punishment for crime and forfeiture of goods affected by the crime are often coincident, they are not necessarily so, and inability to reach the criminal is a reason for subjecting the goods to forfeiture.

A foreign consignor is charged with knowledge of the regulations of the United States in regard to importation of goods and their disposition in case they are not called for after removal from the vessel.

When goods are unloaded and placed in General Order they are actually introduced into the commerce of the United States within the meaning of the statute intending to prevent fraud on the customs.

195 Fed. Rep. 438, reversed.

THE facts, which involve the construction of the tariff laws of the United States in regard to attempted introduction into the commerce of the United States of goods fraudulently undervalued, are stated in the opinion.

*Mr. Assistant Attorney General Adkins* for the United States.

*Mr. Albert H. Washburn* for the respondent.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was a proceeding to forfeit, for fraud of foreign consignors, goods not technically entered at the New York Customs House, but unloaded from the ship and stored in General Order. The libel charges that Castillo & Co. were engaged in buying and selling Panama hats shipped to them by merchants from foreign ports. These consignors, as required by law, (June 10, 1890, c. 407; 26 Stat. 131), delivered to the American Consular Agent, at the point of shipment, three sets of invoices showing the value of the property intended for importation into the United States. One of these invoices was retained by that officer, one was sent to the Collector of the Port at New York, and the third was delivered to the consignor and by him forwarded to the consignee, Castillo & Co. All the provisions of the law were complied with, except that the consignors falsely and fraudulently undervalued the merchandise. The goods arrived in New York during April, May and June, 1910, but were not called for by the consignee. They were accordingly put in General Order by virtue of Customs Regulations (§§ 1087, 1088; 1902, Rev. Stat. 2954, 2989) whereby the Collector takes possession of goods unloaded but unclaimed. They are then stored in a General Order warehouse, the consignee having the right at any time within 12 months to withdraw them and make due entry therefor. If not so entered within the year, the merchandise must be sold at public auction.

The libelled goods not having been called for, the Collector, in May, 1911, caused proceedings to be instituted to have them forfeited under the provisions of § 9 of the Tariff Act of August 5, 1909, c. 6, 36 Stat. 11, 97, which declares "That if any consignor, seller, owner, importer, consignee, agent, or other person or persons, shall enter or introduce, or attempt to enter or introduce, into the commerce of the United States any imported

merchandise by means of any fraudulent or false invoice, . . . or shall be guilty of any willful act or omission by means whereof the United States shall or may be deprived of the lawful duties, . . . such merchandise, or the value thereof, to be recovered from such person or persons, shall be forfeited, . . . and such person or persons shall, upon conviction, be fined—or imprisoned—or both, in the discretion of the court."

Maximo Castillo, as claimant, filed exceptions to the libel on the ground that the merchandise was not subject to forfeiture because there had been no entry of the goods, contending that placing them in General Order was not even an attempt to introduce them into the commerce of the United States, inasmuch as the owner might, during the year, direct them to be forwarded to a foreign country without payment of a duty here. This contention was sustained by the District Judge. That judgment was affirmed by the Circuit Court of Appeals (195 Fed. Rep. 438) and the case is here on writ of certiorari.

The prior Tariff Act (26 Stat. 131) provided for the forfeiture of the goods "if any owner, importer, consignee, agent or other person shall make or attempt to make any entry of imported merchandise by means of any fraudulent or false invoice." In several cases arising under that act it was held that the language used did not cover the case of fraud by the consignor, nor could the goods be forfeited for the wrongful conduct of any person if the act preceded the making of the documents or taking any of the steps necessary to enter the goods.. *United States* v. *646 Half Boxes of Figs*, 164 Fed. Rep. 778 (1908); *United States* v. *One Trunk*, 171 Fed. Rep. 772 (July, 1909). Under the statute, as thus construed, there was no penalty for the grossest fraud on the part of the consignor, notwithstanding the fact that his invoice valuation was of great importance in determining true value, as a basis for collecting the duty. And even if the consignor was

also consignee it had been held that there was a *locus pœnitentiœ* so that he might, before entry, substitute a true for a false invoice and thus escape a forfeiture.

In order to close these loopholes and to make the act more effective Congress, on August 5, 1909 (36 Stat. 11, 97), changed the law so as to increase the number of persons whose fraud should be punished. It also enlarged the scope of conduct for which the goods should be forfeited. Instead of punishing only for the fraud of the "owner, importer, consignee and other persons," as under the act of 1890, provision was made for forfeiture for fraud, of the "consignor or seller." Instead of punishing only for entering or attempting to enter on a fraudulent invoice, it punished an attempt by such means "to introduce any imported merchandise into the commerce of the United States" This latter phrase necessarily included more than an attempt to enter, otherwise the amendment was inoperative against the consignor against whom it was specially aimed, for he does not, as such, make the declaration, sign the documents, or take any steps in entering or attempting to enter the goods. When he makes the false invoice in a foreign country there is no extraterritorial operation of the statute whereby he can be criminally punished for his fraud. But when the consignor made the fraudulent undervaluation in the foreign country and on such false invoice the goods were shipped and arrived consigned to a merchant in New York, the merchandise was within the protection and subject to the penalties of the commercial regulations of this country even though the consignor was beyond the seas and outside the court's jurisdiction.

It was argued that the goods could only be forfeited for the same acts that would support an indictment, and inasmuch as the consignor could not be prosecuted here for making a false invoice in a foreign country, neither could the goods be forfeited for the same conduct in the

same place.  But while punishment for the crime and forfeiture of the goods will often be coincident penalties, they are not necessarily so, nor is there any inconsistency in proceeding against the *res* if the wrongdoer is beyond the jurisdiction of the court.  The very fact that the criminal provision of the statute does not operate extra-territorially against the consignor, would be a reason why the goods themselves should be subjected to for-feiture on arrival here.  Cf. *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347, 356; *United States* v. *Nord Deutscher Lloyd*, 223 U. S. 512.  The consignor's absence would not relieve the goods from the liability to be forfeited.  He must be treated as having made the shipment with a knowledge that they could not remain in the vessel (Rev. Stat. § 2880), and that if, after being unloaded, they were not called for, they would be stored in General Order, there to remain, free from the burden of any state legislation and within the protection of the commerce clause of the Constitution.  The foreign con-signor is charged with knowledge that if goods stored in such warehouse were not called for within the year they were to be sold at public outcry; or if, during that period, they were taken out for shipment to a foreign port, they would start from a place of storage within the territory of the United States and move thence in a channel of its commerce.  So that in the present case when the goods, fraudulently undervalued and consigned to a person in New York, arrived at the port of entry there was an attempt to introduce them into the commerce of the United States.  When they were unloaded and placed in General Order they were actually introduced into that commerce, within the meaning of the statute intended to prevent frauds on the customs.  The judgment dis-missing the libel is

*Reversed and the cause remanded for further proceedings in conformity with this opinion.*