### In re FOUR PACKAGES CUT DIAMONDS.

### GOLDSTEIN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.  December 11, 1918.)

### No. 61.

CUSTOMS DUTIES ☞130—VIOLATION OF CUSTOMS LAWS—FORFEITURES.

Under Tariff Act, § III, par. H, merchandise attempted to be introduced into the commerce of the United States upon false and fraudulent invoices is subject to forfeiture, although the fraud consists in fraudulent undervaluation by the consignor in a foreign country and sending by registered mail, and although the consignee or owner in this country was innocent.

In Error to the District Court of the United States for the Southern District of New York.

Libel by the United States against Four Packages of Cut Diamonds; Max Goldstein, claimant. From a judgment of forfeiture, claimant brings error. Affirmed.

For opinion below, see 247 Fed. 354.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Crim & Wemple, of New York City (William L. Wemple, of New York City, of counsel), for plaintiff in error.

Francis G. Caffey, U. S. Atty., and John E. Walker, Asst. U. S. Atty., both of New York City, for the United States.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. The United States filed a libel of information, asking for the condemnation of four packages of diamonds liable to custom duties, imported by Max Goldstein from the republic of Cuba, first, on the ground that they had been imported in sealed packages by registered mail, contrary to the provisions of the Postal Convention dated June 16, 1903, between the United States and Cuba, and the Universal Postal Convention dated May 26, 1906; second, on the ground that they had been fraudulently undervalued by the consignor in the consular invoice at Havana, Cuba. The four libels were by consent of counsel consolidated, and, both parties having moved for the direction of a verdict, Judge Manton directed a verdict of forfeiture in favor of the government.

We will take up the second ground of forfeiture, which applies to all the packages, because, if it is good, there will be no need of considering the first, which applies only to three of the packages.

The information charges Goldstein as importer, but the government at the trial exonerated him from any charge of fraud. This leaves the question whether what was done by the consignor abroad so tainted the goods themselves as to subject them to forfeiture. Judge Manton has found as a fact that Boyer, the consignor at Havana, who made the consular invoice, fraudulently undervalued the diamonds, which finding is binding on us. The Supreme Court held in United States v. Twenty-Five Packages of Panama Hats, 231 U. S. 358, 34 Sup. Ct. 63, 58 L. Ed. 267, that the purpose of the Tariff Act of August 5, 1909, 36 Stat. 11, 97, c. 6, was to make acts committed abroad by persons beyond the jurisdiction of the court for the purpose of defrauding the customs a ground of forfeiture of the goods, even if the consignee or owner here were innocent. Mr. Justice Lamar said:

"In order to close these loopholes and to make the act more effective, Congress, on August 5, 1909 (36 Stat. 11, 97), changed the law so as to increase the number of persons whose fraud should be punished. It also enlarged the scope of conduct for which the goods should be forfeited. Instead of punishing only for the fraud of the 'owner, importer, consignee and other persons,' as under the act of 1890, provision was made for forfeiture for fraud of the 'consignor or seller.' Instead of punishing only for entering or attempting to enter on a fraudulent invoice, it punished an attempt by such means 'to introduce any imported merchandise into the commerce of the United States.' This latter phrase necessarily included more than an attempt to enter; otherwise, the amendment was inoperative against the consignor against whom it was specially aimed, for he does not, as such, make the declaration, sign the documents, or take any steps in entering or attempting to enter the goods. When he makes the false invoice in a foreign country, there is no extraterritorial operation of the statute whereby he can be criminally punished for his fraud. But when the consignor made the fraudulent undervaluation in the foreign country, and on such false invoice the goods were shipped, and arrived consigned to a merchant in New York, the merchandise was within the protection and subject to the penalties of the commercial

regulations of this country, even though the consignor was beyond the seas and outside the court's jurisdiction."

Section III, par. H, of the present tariff act of October 3, 1913 (38 Stat. 183, c. 16 [Comp. St. § 5526]), under which these libels were filed, indicates the same intention even more strongly:

"H. That if any consignor, seller, owner, importer, consignee, agent, or other person or persons shall enter or introduce, or attempt to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or shall make any false statement in the declarations provided for in paragraph F without reasonable cause to believe the truth of such statement, or shall aid or procure the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, or shall be guilty of any willful act or omission by means whereof the United States shall be or may be deprived of the lawful duties or any portion thereof, accruing upon the merchandise or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from such person or persons, shall be forfeited, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates. That the arrival within the territorial limits of the United States of any merchandise consigned for sale and remaining the property of the shipper or consignor, and the acceptance of a false or fraudulent invoice thereof by the consignee or the agent of the consignor, or the existence of any other facts constituting an attempted fraud, shall be deemed, for the purposes of this paragraph, to be an attempt to enter such merchandise notwithstanding no actual entry has been made or offered."

But paragraph I offers a locus pœnitentiæ within which the consular invoice may be amended so as to state the true value of the goods, the material provisions of which are as follows:

"I. That the owner, consignee, or agent of any imported merchandise may, at the time when he shall make entry of such merchandise, but not after either the invoice or the merchandise has come under the observation of the appraiser, make such addition in the entry to or such deduction from the cost or value given in the invoice or pro forma invoice or statement in form of an invoice, which he shall produce with his entry, as in his opinion may raise or lower the same to the actual market value or wholesale price of such merchandise at the time of exportation to the United States, in the principal markets of the country from which the same has been imported; and the collector within whose district any merchandise may be imported or entered, whether the same has been actually purchased or procured otherwise than by purchase, shall cause the actual market value or wholesale price of such merchandise to be appraised; and if the appraised value of any article of imported merchandise subject to an ad valorem duty or a duty based upon or regulated in any manner by the value thereof shall exceed the value declared in the entry, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total appraised value thereof for each 1 per centum that such appraised value exceeds the value declared in the entry. * * *" Comp. St. § 5527.

United States v. One Case, 234 Fed. 856, 148 C. C. A. 454, is an instance in which we held forfeiture to have been properly denied because of the above provision. Unfortunately in the present case Gold-

stein, the owner of the diamonds, cannot get the benefit of this section, because no correction was made in the consular invoice before entering the goods, they never having been entered at all, and because there is no evidence that any correction was made before "the invoice or the merchandise had come under the observation of the appraiser." The consignee, Jacobsen, notified the special agent at the custom house that there was a registered letter addressed to him containing dutiable goods on which duties had not been paid. This letter, inclosing the bill of goods and the consular invoice, was obtained from the post office by Jacobsen's custom house brokers in the presence of a special agent of the United States and immediately opened and turned over to the United States appraiser. The purpose of Congress is perfectly clear and must be carried out, even if, as in this case, innocent persons suffer great hardships.

The judgment is affirmed.