## UNITED STATES v. 7 BARRELS, ETC., OF SPRAY DRIED WHOLE EGG.

## SAME v. MARSHALL KIRBY & CO., Inc.

### No. 8381.

Circuit Court of Appeals, Seventh Circuit.
March 15, 1944.

B. Howard Caughran and Paul A. Pfister, U. S. Atty., both of Indianapolis, Ind., and Tom C. Clark, Asst. Atty. Gen., and Golden N. Dagger, Sp. Asst. to the Atty. Gen., for appellant.

Arthur L. Israel, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

The Government appeals from a judgment dismissing its libel for want of jurisdiction. The libel, alleging adulteration, had been filed against one lot of seven barrels of dried eggs which it sought to condemn under the provisions of § 304(a) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 334(a). The claimant by answer asserted ownership of the property and interposed two defenses, first, that the libel failed to state facts indicating that the article seized was introduced into or was in interstate commerce, at the time of the seizure, and second, that the article was not adulterated. The prayer asked for a dismissal of the libel and a return of the libeled goods to the claimant. The issue as to the second count is not before us, and, so far as this record discloses, it was not submitted at the hearing.

It will be observed that the first count of the answer amounts to nothing more than a demurrer to the complaint, or a motion to dismiss it for lack of sufficient facts. However, neither the court nor the parties so considered it. The parties stipulated that the cause be transferred to the Indianapolis Division of the same District for trial and disposition, which was done. Without objection it was assigned for a day certain for hearing oral testimony, if desired by either party, and oral argument upon the first count of the answer, and a jury trial was waived. A stipulation of facts was filed, and both parties introduced other testimony at the trial. The District Court found the facts specially, rendered its conclusions of law thereon, and entered judgment for claimant dismissing the complaint for lack of jurisdiction. From that ruling this appeal is prosecuted. Under these circumstances we shall treat the question of jurisdiction upon the basis of facts found rather than those pleaded.

The statute relied upon to confer jurisdiction provides:

"Any article of food * * * that is adulterated or misbranded when introduced into or while in interstate commerce * * * shall be liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States within the jurisdiction of which the article is found * * *."

The subject of the libel was part of 150 barrels of spray-dried whole eggs tendered by appellee to the Federal Surplus Commodities Corporation in part performance of a contract between the parties. The contract here involved was in writing, consisting of four documents executed in the order named: (1) a printed announcement

by FSCC that under certain named conditions it would receive and consider offers for the sale of spray-dried whole eggs intended for delivery at any stipulated time until December 31, 1942; (2) an offer by appellee to sell and deliver to the FSCC, at appellee's plant in Terre Haute, Indiana, all or any part of 66,690 pounds of spray-dried whole eggs, on the basis of the terms and conditions of the announcement; (3) acceptance by the FSCC of appellee's offer, and (4) appellee's confirmation of the acceptance.

The FSCC announcement consists of more than 21 pages of this printed record. It describes in minute detail the required content, character, and process of production of the eggs and their shipping containers. It required each shipping container to be marked by appellee, before testing the product and its removal from appellee's plant, with the following items of information: Name and type of the product; net weight; FSCC contract number; manufacturer's lot and container numbers; vendor's name and delivery-point address; and the month and year of manufacture. After testing the product, presently referred to, appellee was required to mark each container with the shipping instructions when and as furnished by the FSCC.

Sampling and inspection of the product to be tendered for delivery was required to be performed by the Agricultural Marketing Administration. For these services appellee was required to arrange with the AMA. The inspection and weight certificates were to be issued at the expense of appellee and delivered by it to the FSCC. All requirements of the contract as to marking were complied with by appellee except marking upon the 7 libeled barrels the name and address of the consignee. This was not done because they were rejected by the FSCC and as to them it furnished no legend in that respect. However, other barrels were substituted by appellee for those rejected and they were accepted. Four weeks before this suit was filed, the Public Health Department of Indiana placed an embargo against the movement and control of the seven barrels. That order was in effect when this action was begun, and so far as this record discloses it is still in effect. The libeled product has never been removed from appellee's plant.

Appellant contends that the contract was a transaction in interstate commerce; that the barrels were marked and set aside as the property to be used in fulfillment of the contract, thus being brought within the exclusive dominion of the out-of-state purchaser, and thereby introduced into commerce within the meaning of the statute. It further contends that the subsequent rejection of the eggs did not remove them from the jurisdiction of the Act or divest them of their interstate character.

We are not in accord with these contentions. It is clear that the contract is quite conditional in its character. It consists of an accepted offer to deliver at appellee's plant, on or before a certain date, a prescribed amount of eggs of a described character. The eggs here libeled were part of a lot intended for delivery, if accepted, within the time, and at the place named in the contract, in part performance thereof. True, they were marked and set aside in seller's plant. However, they were not thus segregated as the property to be used in fulfillment of the contract, but for inspection and testing to determine whether they complied with the required specifications. This was necessary before there could be an acceptance of the delivery, and before acceptance there could be no dominion of the FSCC over the property.

The contract provided that the product should be considered ready for delivery on the date the inspection certificate was issued, and not sooner. That provision definitely was of great interest to both parties, and each is entitled to rely upon it. The buyer was entitled to receive that for which it bargained, and we must assume, in the absence of evidence to the contrary, that appellee did not intend that it should lose dominion of or the title to its property, or that the buyer should acquire either, before the required chemical analysis was reported. Certainly we can not assume that appellee, before such report, would intentionally cast its property into the channel of interstate commerce, thereby assuming the unnecessary risk of a lawsuit of this character. The plain and unambiguous language of the contract forbids such an assumption. It seems to us that the only reasons for the required preliminary marking and segregation of the barrels before the inspection and test was that actual delivery might be expedited after the acceptance, and the probability of substitution for any part of the tendered produce, without the knowledge of the FSCC, would be greatly minimized.

770

It is quite apparent that the object of the statute is to prevent adulterated articles of food from entering interstate commerce. That object seems to have been fully accomplished long before this libel suit was filed. After the inspection certificate was issued neither party insisted upon a delivery of the seven barrels, and that was as early as a delivery could be made under Article 7 of the contract. Appellee thereupon substituted seven other barrels in their stead and the FSCC accepted them, whereupon the State of Indiana placed an embargo upon the rejected barrels, the effect of which was to prevent their removal from the plant. Hence they could never become a part of interstate commerce.

We recognize the legal principle that goods may become a part of interstate commerce before transportation begins, and may remain such after transportation ends. The cases bearing on the former enunciate the rule that where goods are purchased in one State for transportation to another, the commerce includes the purchase quite as much as it does the transportation. Dahnke-Walker Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239. There defendant, a resident of Kentucky, contracted to sell and deliver his crop of wheat, F.O.B. cars in Kentucky, to plaintiff, a resident of Tennessee. Part of it was thus delivered, and payment was advanced for more than was delivered. The market price of wheat advanced, and defendant failed to deliver more. The action was for breach of contract and damages. The seller defended on the ground that plaintiff, a foreign corporation, had not complied with the Kentucky statute with respect to doing business in that State, which was true. The buyer replied that the purchase and sale was a transaction in interstate commerce. The Court so found and held that the Kentucky statute was invalid as to that transaction because repugnant to the commerce clause, and damages for breach of the contract were awarded. There the specific wheat crop was unconditionally purchased, to be paid for upon delivery; the wheat was subject to no subsequent test; the terms of the sale and purchase constituted a completed transaction, subject to no variation, and at that moment it became a part of interstate commerce in strict compliance with the rule above referred to.

In the instant case, however, the contract did not provide, nor did the parties intend that the eggs segregated and marked prior to the test would then and there become a part of interstate commerce, or that such acts would amount to a sale or delivery of them. On the contrary, the contract provided that the product should not be considered ready for delivery until the inspection certificate was issued, and that eggs tendered for delivery must be accompanied by that certificate. Neither party knew whether they would pass inspection, and neither was permitted legally to sell or purchase eggs for interstate commerce which failed to pass inspection. Hence we conclude that neither title to nor dominion over any part of the eggs tendered for inspection passed to the FSCC until they were accepted, and since the seven barrels did not successfully pass inspection and were not qualified for transportation, and were never accepted, they never became a part of the product which appellee agreed to sell and which the FSCC agreed to purchase, and they were never introduced into interstate commerce. True, the FSCC accepted appellee's written offer to sell and deliver a specified amount of a certain kind of eggs, but it never accepted any part of the eggs submitted for inspection until after they had successfully passed the test.

In support of its contention, appellant relies on Hipolite Egg Co. v. United States, 220 U.S. 45, 31 S.Ct. 364, 55 L.Ed. 364, and United States v. Twenty-Five Packages of Hats, 231 U.S. 358, 34 S.Ct. 63, 58 L.Ed. 267. In both cases the questions at issue arose at the destination after transportation. We have no quarrel with the principles therein enunciated. However, they do not seem helpful in determining the question here where the sole issue involved relates to the events before transportation. Appellant also relies on Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 869, 80 L.Ed. 1160, where the distinction was drawn in regard to federal jurisdiction between goods which were part of a contract of sale in interstate commerce and goods merely intended to be sold in another state. There the Court said: "One who produces or manufactures a commodity, subsequently sold and shipped by him in interstate commerce, whether such sale and shipment were originally intended or not, has engaged in two distinct and separate activities. So far as he produces or manufactures a commodity, his business is purely local. So far as he sells and ships, or

contracts to sell and ship, the commodity to customers in another state, he engages in interstate commerce. In respect to the former, he is subject only to regulation by the state; in respect to the latter, to regulation only by the federal government."

We have never questioned the soundness of that principle. It constitutes the basis of our conclusion. We are convinced that if appellee had sold and shipped, or contracted to ship, the seven barrels of eggs to customers in another state it would be held to have engaged in interstate commerce. However, our conclusion is that appellee never sold nor shipped, nor did it contract to sell or ship, to customers in another state the seven barrels of eggs in question.

Affirmed.