**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.

PETER OWENS LEHMAN,
<u>Claimant-Appellee,</u>

and

1,966 CARTONS, MORE OR LESS,OF

WOMEN'S GARMENTS DESCRIBED IN PART AS: 1,000 CARTONS, MORE OR LESS, CONTAINING 5,000 DOZEN WOMEN'S COTTON DENIM SHIRTS; 966 CARTONS, MORE OR LESS, CONTAINING 5,756 DOZEN WOMEN'S 100% RAYON WOVEN BLOUSES,
<u>Defendants.</u>

No. 98-1307

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.

PETER OWENS LEHMAN,
<u>Claimant-Appellee,</u>

and

1,966 CARTONS, MORE OR LESS,OF WOMEN'S GARMENTS DESCRIBED IN PART AS: 1,000 CARTONS, MORE OR LESS, CONTAINING 5,000 DOZEN

No. 99-2119

WOMEN'S COTTON DENIM SHIRTS; 966
CARTONS, MORE OR LESS, CONTAINING
5,756 DOZEN WOMEN'S 100% RAYON
WOVEN BLOUSES,
<u>Defendants.</u>

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
Julian Abele Cook, Jr., Senior District Judge, sitting by designation.
(CA-94-2641-2-8)

Argued: December 2, 1999

Decided: August 23, 2000

Before NIEMEYER and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Reversed and remanded by published opinion. Senior Judge Butzner
wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Stanley D. Ragsdale, Assistant United States Attorney,
Columbia, South Carolina, for Appellant. Timothy D. Scrantom, TEN
STATE STREET, L.L.P., Charleston, South Carolina, for Appellee.
**ON BRIEF:** J. Rene Josey, United States Attorney, Marvin J. Caugh-
man, Assistant United States Attorney, Robert F. Daley, Jr., Assistant
United States Attorney, Columbia, South Carolina; Brooks Thomas,
Assistant Chief Counsel, U.S. CUSTOMS SERVICE, Atlanta, Geor-
gia, for Appellant. Lisa C. Heydinger, TEN STATE STREET, L.L.P.,
Charleston, South Carolina, for Appellee.

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

On January 12 and 25, 1994, United States Customs officials seized three containers of garments, Defendants 1 and 2. The United States filed a civil in rem complaint for forfeiture of Defendants 1 and 2 pursuant to 19 U.S.C.A. § 1595a. Prior to a judicial determination of forfeitability, Customs inadvertently sold the Defendant goods-- approximately 5,000 dozen women's cotton shirts and 5,756 dozen women's 100% rayon blouses. The United States and the claimant moved for a substitution of res.

After a bench trial, the district court directed the United States to release Defendants 1 and 2, or their monetary equivalent ($352,625), to claimant, Peter Owens Lehman, the assignee of all right, title, and interest in the goods. The district court denied the government's motion for reconsideration, and the United States appealed.

In August 1998, the U.S. Customs Service located a certificate of origin falsely designating Malta as the country of origin for Defendant 1. The government moved for relief from judgment, and the district court denied the motion. The government appealed, and we consolidated both appeals.

The question presented on appeal is whether intermingled goods with false or confusing markings of country of origin and fabric content are subject to seizure and forfeiture pursuant to § 1595a as "merchandise which is introduced or attempted to be introduced into the United States contrary to law" when the goods are unladed at the United States port of entry.

I

In October 1993, One Price Clothing, Inc. (One Price), a South Carolina importer and discount retailer, became the subject of a Customs Service transshipment investigation. Transshipment is a process of illegally relabeling goods to reflect a false country of origin in order to evade import restrictions. In August 1993, One Price had

3

placed an order through buying agent Awards Activewear for women's cotton and rayon blouses with D&Sc Co. Ltd. (D&Sc), a Malta-based company that manufactures and distributes apparel. After the investigation began, Awards Activewear notified D&Sc in mid-December 1993 that One Price intended to repudiate the orders for both Defendant goods and refuse payment. D&Sc contacted the freight company to have both Defendants 1 and 2 returned to Malta. Despite instructions to the contrary, the freight company unladed Defendant 1 into a Customs warehouse.

In January 1994, while the Defendant goods were in a warehouse awaiting return to Malta, Customs inspected and seized the garments. The district court made several findings of fact:

> (1) the Malta garments had been repackaged along with a manipulation of their labels;

> (2) some of the Malta garments did not contain any country of origin labels;

> (3) some of the Malta garments were marked "Made in China" intermingled with the garments that bore a "Made in Malta" identification;

> (4) some of the "Made in Malta" labels were affixed to some of the Fiji [sic] garments with staples;

> (5) some of the garments contained labels that identified its fiber content as 100% cotton when, in fact, the product was made from rayon; [and]

> (6) some of the garments did not contain any labels that identified the content of its fiber . . . .

See J.A. at 653-54. Nevertheless, the district court ordered the government to release its claim over the goods, or the proceeds of the sale of the goods, upon the belief that § 1595a requires the government to prove that the goods "entered the stream of commerce." We reverse because the plain language of the statute does not require proof that the goods entered the stream of commerce.

4

II

We review the district court's interpretation of "introduced or attempted to be introduced into the United States" de novo. See United States v. 7715 Betsy Bruce Lane, 906 F.2d 110, 112 (4th Cir. 1990). Other courts have construed the verb "introduce" within the Customs context. See United States v. Twenty-Five Packages of Panama Hats, 231 U.S. 358, 362 (1913); Keck v. United States, 172 U.S. 434, 447, 459 (1899); United States v. Food, 2,998 Cases, 64 F.3d 984, 988-89 (5th Cir. 1995); United States v. 169 Bales Containing Wool, 56 F.2d 736, 737 (2d Cir. 1932). But this case appears to be the first time a court has analyzed "introduce" within § 1595a since Congress substantially amended the statute in 1986 and 1993. See Customs Enforcement Act of 1986, Pub. L. No. 99-570, § 3123, 100 Stat. 3207, 3207-87 (1986); North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 624, 107 Stat. 2057, 2187-88 (1993)(current version at 19 U.S.C.A. § 1595a (West 1999)).

At trial and again on appeal, Lehman argued that it was essential for the government to prove that the goods entered the stream of commerce, and if this element were not proved, the statute had not been violated. In agreement, the district court held that:

> material is not introduced into the United States commercial stream simply because it is unladen on our shores. Rather, the owner or the seller of the goods must make some affirmative effort to introduce the product into commerce. Thus, the harm that the law seeks to avoid was never done--the goods were never introduced into the United States commerce.

J.A. at 659-60 (emphasis added).

We cannot accept this reading of the statute. As amended, it provides:

> Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows:

5

* * *

(2) The merchandise may be seized and forfeited if--

* * *

(E) it is merchandise which is marked intentionally in violation of section 1304 of this title
. . . .

19 U.S.C.A. § 1595a(c)(2)(E) (West 1999) (amended by Customs Enforcement Act of 1986, Pub. L. No. 99-570, § 3123, 100 Stat. 3207, 3207-87 (1986); North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 624, 107 Stat. 2057, 2187-88 (1993)).

A fundamental canon of statutory construction requires that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Perrin v. United States, 444 U.S. 37, 42 (1979); see also 2A Norman J. Singer, Sutherland Statutory Construction § 46:01 (6th ed. 2000). Because "introduce" is not defined within 19 U.S.C.A. § 1595a, the Customs code, or the federal regulations, we turn to the dictionary definition of introduce for its common meaning. See Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1, 11 (1931). Webster's Third New International Dictionary defines introduce as "to lead, bring, conduct, or usher in esp. for the first time . . . [or] to put or insert into." 1186 (3d. ed. 1986).

The district court reasoned that two cases interpreting an earlier version of 19 U.S.C.A. § 1595a, United States v. One 1976 Mercedes 450 SLC, Etc., 667 F.2d 1171, 1173 (5th Cir. 1982), and United States v. One 1970 Ford Pick-Up Truck, Serial No. F10GCH17034, 537 F. Supp. 368, 369 (N.D. Ohio 1981), required that the goods be introduced into the stream of commerce in order to violate the statute. In these cases, both courts rejected claimants' arguments that forfeiture of their vehicles under 19 U.S.C.A. § 1595(a) was improper because the merchandise, which had been stolen from Customs custody, had been introduced prior to the theft. But these cases were decided before

6

Congress amended § 1595a in 1986 and 1993, adding subsection (c) --the subsection at issue in this case--in 1986 and refining it in 1993. See Customs Enforcement Act of 1986, Pub. L. No. 99-570, § 3123, 100 Stat. 3207, 3207-87 (1986); North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 624, 107 Stat. 2057, 2187-88 (1993) (current version at 19 U.S.C.A.§ 1595a (West 1999)). Through the amendments, Congress provided for forfeiture of merchandise that "is introduced or attempted to be introduced into the United States contrary to law." 19 U.S.C.A. § 1595a(c) (West 1999).

In sum, we hold that these goods were introduced when they were moved from the ship that transported them to the warehouse on United States soil. The government did not have to prove that the merchandise entered the stream of commerce. We reverse this aspect of the case.

We remand with respect to § 1595a(c)(2)(E) for the district court to determine whether the violation of law was intentional.

REVERSED AND REMANDED

7